**In re Robert T. MULLIN and Jolie Ann Mullin, Debtors.**

**FRITS LOONSTEN, INC., Plaintiff,**

v.

**Robert Timothy MULLIN and Jolie Ann Mullin, Defendants.**

**Bankruptcy No. IP83–3131.
Adv. No. 83–1126.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

July 15, 1985.

Kevin P. Dempsey, Hopper & Opperman, Indianapolis, Ind., for plaintiff.

Robert T. Mullin, Jolie Ann Mullin, Boca Raton, Fla., pro se.

### ENTRY ON MOTION TO DETERMINE DISCHARGEABILITY OF DEBT

ROBERT L. BAYT, Bankruptcy Judge.

This case is before the Court on the Complaint of the plaintiff, Frits Loonsten, Inc. ("Loonsten"), filed in October of 1983, to determine non-dischargeability of debt. The defendants, Robert Timothy Mullin and Jolie Ann Mullin ("Mullin") filed their answer on November 10, 1983. Mullin filed their Chapter 7 bankruptcy petition on August 15, 1983. In his complaint, the plaintiff alleges that four checks written by Mullin and returned for insufficient funds constitute a non-dischargeable obligation in the amount of $56,000.00.

Loonsten filed a motion for summary judgment on November 6, 1984. In January, 1985, Mullin filed their response and opposing affidavits. The motion for summary judgment came before this Court for hearing on May 17, 1985. The motion for summary judgment was overruled and the

parties agreed to proceed to trial on the merits.

The evidence at the trial established that in the spring of 1982, Mullin contacted Loonsten to discuss having some landscaping work done at their home in Zionsville. On or about May 18, 1982, Mullin contracted with Loonsten for the construction of a swimming pool at the house. The total cost of the construction was to be $18,-750.00. When the agreement was signed, $6,250.00 was to be paid and the balance was to be due as the work progressed.

On or about June 19, 1982, the parties entered into a second contract for extensive landscape construction and planting. The total cost of this contract was to be $39,-350.00. The contract terms provided that $14,000.00 of the price was to be paid at the end of the first week, due June 28, 1982; $14,000.00 was to be paid at the end of the second week, due July 5, 1982; and $14,000.00 was to be paid at the end of the third week, due July 12, 1982.

Loonsten commenced work on the Mullin property shortly after the first contract was signed. In accordance with the terms of the second contract, Mullin mailed a check dated June 28, 1982, to Loonsten, which was received on or about June 29, 1982. On or about July 8, 1982, Loonsten received a check dated July 7, 1982, which was given in compliance with the terms of the second contract calling for a $14,000.00 payment on July 7, 1982.

Later on July 8, 1982, Loonsten was notified that the first check received from Mullin had been dishonored and returned because of insufficient funds. Loonsten contacted Mullin and was told they would write a check to replace the first check that had bounced. Later that same day Loonsten received the replacement check which was dated June 29, 1982. The checks dated June 29, 1982 and July 7, 1982, respectively, were deposited on or about July 13, 1982. A fourth check, given to conform with the terms of the second landscaping contract, was dated July 12, 1982, and was delivered to Loonsten on or about July 13, 1982.

Several days after the fourth check was deposited, Loonsten was notified that the second and third checks had been dishonored and returned for insufficient funds. Loonsten ceased work on the Mullin contract. Eventually, Loonsten was notified that the fourth check had similarly been dishonored and returned because of insufficient funds.

Loonsten then filed an action against Mullin and other parties in state court. Mullin filed their bankruptcy petition under Chapter 7 on August 15, 1983, and the state court proceeding became subject to the automatic stay. Loonsten then filed this action on the theory that the four checks totalling $56,000.00 is a non-dischargeable debt under Section 523(a)(2) of the Bankruptcy Code.

11 U.S.C. Section 523(a)(2)(A) provides:

(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

$$* \quad * \quad * \quad * \quad * \quad *$$

(2) for obtaining money, property, services, or an extension, renewal or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, . . .

■ For a debt to be determined non-dischargeable under 11 U.S.C. Section 523(a)(2)(A), the false representation or false pretense must involve moral turpitude or intentional wrong. The representations must be knowingly and fraudulently made, and they must be relied upon by the other party. *In re Miller*, 5 B.R. 424 (Bkrtcy.W.D.La.1980).

■ The issuance of a check carries an implied representation by the issuer that there are funds available to honor the check when presented and the one who issues the check, knowing that he has no funds to cover the check, is just as guilty of making false representations as one who actually makes such representations expressly, either orally or in writing. *Matter of Anderson*, 10 B.R. 296 (Bkrtcy.W.D.

Wisc.1981). The two elements on which "NSF" check cases focus are: (1) was there fraud or an intentional wrong by the debtor; and (2) did the creditor reasonably rely on the validity of the check. *Id.*

Here, Mullin clearly made representations. Mr. Mullin testified that he had indeed written checks for which he knew there were no monies to cover. He contends that this did not constitute fraud, though, because this arrangement had been agreed to by all parties due to the fact that he was expecting a substantial amount of money to be forthcoming. Loonsten testified, however, that at no time did Mr. Mullin say anything about the possibility that any of the checks might be drawn on an account lacking sufficient funds. As events turned out, the business deal of Mullin fell through and the money never came in.

In Indiana, fraudulent intent may be statutorily inferred. Indiana Code 35–43–4–4(e) states in pertinent part:

[A] person who has insufficient funds in or on account with a drawee credit institution and who makes, draws, or utters a check, draft or order for payment on the credit institution may be inferred:

(1) To have known that the credit institution would refuse payment upon presentment in the usual course of business; and

(2) To have intended to deprive the owner of any property acquired by making, drawing, or uttering the check, draft or order for payment of a part of the value of that property.

The debtors knowingly transferred checks drawn on an account with insufficient funds. The debtors' issuance of a series of these checks together with the Indiana statute are clearly sufficient to show an intentional wrong.

In addition, Loonsten relied upon Mullin's promise to make good the checks that were returned for insufficient funds. Even after the checks were returned for insufficient funds, Mr. Loonsten continued work on the contracts, hoping that Mullin would eventually cover the checks. He continued to work on the property until the second and third checks had been dishonored. After the fourth check had been dishonored, he filed action against Mullin.

In this case representations were knowingly made that were relied upon by Loonsten. The debtors' issuance of checks on the probability that the money would be forthcoming shows a reckless disregard for the state of their account which this Court cannot countenance. It shocks the Court to think that a person would make such expenditures on the "if come" (i.e., "I'll pay you if the money comes."). Such behavior cannot be condoned or tolerated in the business community. Persons conducting their business affairs in such a fashion are showing a complete disregard for the welfare of the person with whom they are dealing. The debtors' actions evidenced an intent to deceive and, taken as a whole, constitute fraud excepting the obligation from discharge.

This Court must now determine the amount that is nondischargeable. A distinction must be made between the two contracts as they were entered into separately. The first contract was for the construction of a swimming pool at a total price of $18,750.00. Loonsten received $6,250.00 when the agreement was signed and was to receive the rest as the work progressed. The $6,250.00 check given by Mullin to Loonsten was good and, thus, Loonsten received that amount on the contract. Mullin gave no further checks on that contract, but defaulted on payment of the remainder of the contract price. This is a simple breach of contract matter and as such, the balance of $12,500.00 due on the contract is dischargeable.

The second contract was for landscape construction and planting for a total sum of $39,350.00. Under the terms of the agreement, payment was to be made in three installment payments of $14,000.00 each. Loonsten commenced work shortly after the first contract was signed. Loonsten ceased work on the project after hav-

ing Mullin's second and third checks returned for insufficient funds.

By bringing an action for the entire contract price, Mr. Loonsten is in effect saying that he performed all of the work required under the terms of the contract. The evidence adduced at the trial, however, shows that this was not the case. The evidence showed that Mr. Loonsten really only completed a portion of the work that was required under the contract. In addition, after he had stopped work on the project, Mr. Loonsten removed considerable shrubs and trees from the property and returned them to his business location.

Thus, based on the fact that Mr. Loonsten did not complete the contract and that he took some of the shrubbery back, it is this Court's opinion that Mr. Loonsten only performed approximately twenty percent of the total amount of work required pursuant to the contract terms. Twenty percent of the total sum is roughly $8,000.00 and it is this amount of the second contract price that the Court finds to be non-dischargeable.

Johnie A. McLeod, Apopka, Fla., for Donald C. Church.

Donald C. Church, trustee for Donald C. Church Trust.

J. Gordon Arkin, Orlando, Fla., for Freedom Federal Sav. and Loan Assn. as successor in interest to ComBank of Winter Park.

Mark E. Budnitz, Chief, Branch of Reorganization Securitys and Exchange Commission, Atlanta, Ga., Lee Jay Colling, Orlando, Fla., Trustee and for trustee.