**In re Donald Wayne TUGGLE d/b/a Big Don's Wholesale Fireworks, Debtor.**

**TOSCO CORPORATION, Plaintiff,**

v.

**Donald TUGGLE, Defendant.**

**Bankruptcy No. 87–10476–BSS. Adv. No. 88–1006–BSS.**

United States Bankruptcy Court, E.D. Missouri, Southeastern Division.

June 6, 1988.

John L. Oliver, Jr., Cape Girardeau, Mo., for plaintiff.

William H. Frye, Cape Girardeau, Mo., for debtor/defendant.

## MEMORANDUM OPINION

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

On February 9, 1988, Tosco Corporation, Plaintiff, (hereinafter "Tosco") filed a Complaint against Donald Tuggle, Defendant, (hereinafter the "Debtor") seeking to declare his indebtedness in the amount of $229,677.46 nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). A trial was conducted May 3, 1988, and parties requested and were granted additional time to file post-trial briefs.

### FACTS

Tosco distributes gasoline and diesel fuel through a terminal in Scott City, Missouri. In March, 1984, Tosco started selling petroleum products to Big Pop Enterprises, Inc., a Missouri corporation (hereinafter "Big Pop"). The Debtor is the sole shareholder and director of Big Pop as well as its President and Secretary. Initially, Tosco granted Big Pop a credit limit of $100,000.00.

In establishing its business relationship, with Big Pop, Tosco required the personal guarantee of the Debtor. Although the Debtor recalls signing a guarantee in favor of Tosco, Tosco did not introduce the guarantee into evidence. Tosco's manager of credit and collections during 1984, Mr. Joseph Bowerbank, testified that a search of the records at Tosco failed to produce the written guarantee of the Debtor.

Mr. Bowerbank further testified that it was the policy and practice of Tosco to contact the Debtor whenever the credit extended to Big Pop exceeded $100,000.00. Such contact would be in the form of an advice that additional sales to Big Pop could not be made until the credit balance was reduced below $100,000.00.

On approximately August 1, 1984, Big Pop was indebted to Tosco in an amount in excess of $100,000.00. Mr. Bowerbank spoke with the Debtor by telephone, advising him that further sales to Big Pop could not be made unless a payment was forthcoming. The Debtor promised to make a payment. On August 3, 1984, Tosco re-

ceived the following checks drawn on the account of Big Pop:

| Date | Amount | Notation on Check |
|------|--------|-------------------|
| July 31, 1984 | $19,961.46 | Payment of Invoice 394321 |
| August 2, 1984 | $14,730.89 | Payment of Invoice 395769 |

Tosco introduced a copy of Big Pop's monthly bank statement which disclosed that Big Pop had a checking account balance on July 31, 1984, of $9,175.27. Big Pop's August bank statement was not produced at trial. Although Plaintiff in its post-trial brief asserts that "Tuggle also admitted in the above-referenced deposition, that he actually knew there were not sufficient funds to cover the checks when they were written" (Plaintiff's brief at p. 4) a careful reading of the deposition (Plaintiff's trial Exhibit 13) does not support such a contention. On August 3, 1984, Tosco permitted Big Pop to continue to purchase product based upon receipt of the two checks drawn on the account of Big Pop's account.

Subsequent to August 3, 1984, Big Pop delivered the following checks to Tosco:

| Date | Amount | Notation on Check |
|------|--------|-------------------|
| August 2, 1984 | $29,818.81 | Payment of Invoice 395770 |
| August 2, 1984 | $25,166.07 | Payment of Invoice 395772 |
| August 6, 1984 | $14,719.28 | Payment of Invoice 396693 |
| August 6, 1984 | $12,452.25 | Payment of Invoice 397390 |
| August 7, 1984 | $22,251.90 | Payment of Invoice 398104 |
| August 7, 1984 | $ 7,321.96 | Payment of Invoice 398746 |

The Debtor placed a telephone call to Tosco on August 13, 1984, to advise it that all of the checks listed above would not be honored by First Security Bank because of insufficient funds. Tosco then sent the Debtor a notice in writing demanding payment within ten days pursuant to § 570.120 R.S.Mo. (1986). From August 3, 1984 through August 10, 1984, Tosco sold Big Pop petroleum products having a value of $229,677.46. It is this amount which Tosco claims is nondischargeable under § 523(a)(2)(A).

In support of its position, Tosco argues that the Debtor obtained property (sale of petroleum product to Big Pop) by fraud. Such fraud is demonstrated by the representation of the Debtor (to send funds to Tosco), when he knew the representation was false (knowledge of Big Pop's bank statement) with the intent to deceive Tosco and that Tosco relied upon the representation (by selling additional product to Big Pop) to its detriment (damages of $229,-677.46).

JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151 and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(I).

DISCUSSION

Plaintiff proceeds under section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A). That section states:

A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt–

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

■ This Court adopts the position of a number of jurisdictions which have applied the provisions of Article 3 of the Uniform Commercial Code and the United States Supreme Court decision of *Williams v. United States*, 458 U.S. 279 (1982) to hold that delivery of a check is not a representation as to whether the check would be honored upon presentment. See *In re Burgstaler*, 58 B.R. 508, 512 (Bkrtcy.D. Minn.1986) and the cases cited therein. Justice Blackmun wrote for the Supreme Court in *Williams v. United States* that:

"technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false'. Petitioner's bank checks served only to direct the drawee bank's to pay the face amounts to the bearer, while committing petitioner to make good the obligations if the banks dishonored the drafts. Each check did not, in terms,

make any representation as to the state of petitioner's bank balance."

*Williams v. United States*, at p. 284–5.

Accordingly, this Court adopts the position that delivery of an ultimately-dishonored check, *without more* [1] does not constitute an actionable representation under § 523(a)(2)(A).

■ Plaintiff relies upon the Debtor's guarantee which was not introduced into evidence because it was either misplaced or lost by Tosco. Contrary to the assertion of Tosco that "its existence has been adequately proven by the business records of Tosco" (see Plaintiff's brief at p. 5) the existence and terms of such a guarantee have not been proved.

Tosco argues that not only was a fraud perpetrated upon it but that fraud was perpetrated by the Debtor. Tosco's case rests upon the assertions that the Debtor made certain representations which he knew were false with the intent and purpose of deceiving Tosco who relied upon those representations to its damage. The frailty of such reasoning is apparent. There was no evidence that the Debtor in his dealings with Tosco was acting in any capacity other than as an agent of Big Pop. The insufficient funds checks which form the foundation of Tosco's allegations of fraud were issued on the account of Big Pop. Tosco believes that the Debtor's promise to Mr. Bowerbank in early August, 1984 "to send funds to Tosco, together with the concurrent sending of the checks, meets the requisite element of a representation" (Plaintiff's brief at p. 7). Tosco's position is misplaced. Its reliance upon *In re Schmidt*, 36 B.R. 459 (E.D.Mo.1983) is in error since that case merely states that the purchase of goods with a credit card is an implied representation that the buyer has the means and intention to pay for his purchases. In the case *sub judice* the buyer was Big Pop not the Debtor. The representation to send a payment was made by Big Pop and not by the Debtor.

With respect to the Debtor's intent to deceive, Tosco argues that the Debtor knew the account balances of Big Pop were insufficient to have the drawee bank honor the checks. The only evidence to support this proposition is Plaintiff's Exhibit 16 which gives the account balance of Big Pop on July 31, 1984. Seven of the eight checks which were returned for insufficient funds were written and transmitted to the Plaintiff in August. Plaintiff has failed to offer evidence of Big Pop's bank balance during the month of August.

The Debtor places great reliance upon the *Matter Of Anson*, 9 B.R. 741 (W.D.Mo. Bktcy.1981). That case states in part:

"The Court must at the outset be mindful of the axiom that the issuance of an insufficient funds check, *even with knowledge of the insufficiency of funds on deposit, does not give rise to a non-dischargeable liability.*" (emphasis added) *Matter of Anson*, at p. 744.

Judge Stewart has consistently so held. See *Matter of Murray*, 7 B.R. 899 (W.D. Mo.Bktcy.1981). The Plaintiff cites *Matter of Anson* for the proposition that a fraud or misrepresentation in connection with the issuance of a check *may* be present by reason of a debtor's assurance that he would have sufficient funds in the bank within a few days. *Matter of Anson*, at p. 744. Mr. Tuggle made no such representation. Plaintiff's brief concedes this factual distinction.[2]

Not only did the Plaintiff fail to establish that the Debtor uttered an explicit statement which constituted a misrepresentation but it failed to further prove that such a misrepresentation was the means by which the *Debtor* obtained the Plaintiff's petroleum products. The evidence is clear that the petroleum products were sold to Big Pop and not the Debtor.

■ Lastly, the Plaintiff argues that the Debtor's fraud may be implied by the provisions of § 570.120 R.S.Mo. (1986) which states in part:

---

1. In addition to the cases cited in *In re Burgstaler*, (supra), numerous other Courts have held that "something more" is necessary in order to bar a debtor's discharge for insufficient funds checks. See *In re Gonzalez Seijo*, 76 B.R. 11

(Bktcy.D.Puerto Rico 1987); *In re Pokrandt*, 54 B.R. 691 (W.D.Wisc.Bktcy.1985); *In re Boyer*, 62 B.R. 648 (Bktcy.D.Mont.1986).

2. Plaintiff's brief at p. 9 states:

## 616

**Passing bad checks**

1. A person commits the crime of passing a bad check when, with purpose to defraud, he issues or passes a check or other similar cite order for the payment of money, knowing that it will not be paid by the drawee, or that there is no such drawee.

3. If the issuer has an account with the drawee, failure to pay the check or order within ten days after notice in writing that it has not been honored because of insufficient funds or credit with the drawee is prima facie evidence of his purpose to defraud and of his knowledge that the check or order would not be paid.

This Court declines the Plaintiff's offer to accept such an implied fraud. The Plaintiff bears the burden of proving actual fraud by clear and convincing evidence and cannot rely on fraud implied in law. *In re Heath,* 60 B.R. 338 (Bktcy.D.Colo.1986).

An Order will be entered this day consistent with this Memorandum.

### ORDER

Pursuant to this Court's Memorandum Opinion entered this day, it is

ORDERED that judgment be entered in favor of the Defendant and against the Plaintiff.

"In this case, not only did Tuggle issue insufficient funds checks, he also explicitly promised Tosco that he would make payment. This is *tantamount* to a representation that he did, in fact, have the funds to make the payments." (emphasis added)