In re Steven L. HORWITZ, Debtor.

MICROTECH INTERNATIONAL, INC., Plaintiff,

v.

Steven L. HORWITZ, Defendant.

CONDUCT U.S.A., INC., a California Corporation, Plaintiff,

v.

Steven L. HORWITZ, Defendant.

Bankruptcy No. 88 B 16891.
Adv. Nos. 89 A 118, 89 A 110.

United States Bankruptcy Court, N.D. Illinois, E.D.

May 12, 1989.

John E. Munger, Tressler, Soderstrom, Maloney & Priess, Chicago, Paul E. Bryer, W. Dundee, Ill., for plaintiff.

John C. Polster, Hollis & Johnson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

The Debtor in this case, Steven L. Horwitz ("Debtor"), brings this Motion to Dismiss Two Actions to Determine Dischargeability of Debts scheduled by Debtor. The first action, brought by Microtech International, Inc. ("Microtech") is based upon four checks issued by Debtor to Microtech, totaling $20,804.45. These checks were subsequently dishonored. Debtor issued the checks in payment for goods supplied to a corporation, Hort Industries, Inc. ("Hort"), of which Debtor was president and principal shareholder. Microtech seeks to have Debtor held personally liable on the checks and to have the debt created thereby declared nondischargeable under Bankruptcy Code Section 523(a)(2)(A).

The second action is brought by Conduct U.S.A., Inc., ("Conduct"). It is based upon two checks issued by Debtor to Conduct in the total amount of $20,825. Those checks also were issued by Debtor on behalf of Hort in payment for supplies and were subsequently dishonored. Conduct seeks to have Debtor held personally liable and to have the debt created thereby nondischargeable under Bankruptcy Code Section 523(a)(2)(A).

Because of the similarity of the issues presented by Debtor's Motion to Dismiss the two complaints, they have been consolidated for purposes of briefing and ruling. In this Opinion, this Court will sometimes refer to both Microtech and Conduct collectively as the "Plaintiffs."

The Debtor makes five arguments in his Motion to Dismiss. Because this Court finds one of those arguments dispositive of the Microtech Complaint and partially dispositive of the Conduct Complaint, this Court will deal with that argument first. This Court will then deal with Debtor's remaining arguments.

## IS THE ISSUANCE OF A CHECK AN IMPLIED REPRESENTATION THAT FUNDS ARE AVAILABLE TO COVER IT?

■ The Plaintiffs bring their actions under Bankruptcy Code Section 523(a)(2)(A). That section provides as follows: "A discharge under Section 727 ... does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...." The elements of a cause of action under that section have been stated as follows: "First that the debtor made a statement or representation.... Second, that this statement or representation was false.... Third, that the statement or representation was made with the intent to deceive, and with either knowledge that it was false or gross recklessness as to its truth.... Fourth, that the plaintiff relied on this statement or representation.... Fifth, that the reliance was reasonable.... Sixth, that the plaintiff suffered a loss.... Seventh, that the loss was proximately caused by the debtor's conduct." *In re Nahas*, 92 B.R. 726,

730 (Bankr.E.D.Mich.1988) (footnote omitted).

One of the Debtor's arguments in his Motion to Dismiss is that his mere issuance of checks to Plaintiffs does not meet the requirement of a statement or representation that is false. Both Plaintiffs strenuously argue against that proposition, noting that there is a split of authority on this issue. This issue is a pure question of law which is ripe for ruling by this Court, even at the Motion to Dismiss stage.

This Court acknowledges that there is a split of authority on the issue of whether the issuance of a check constitutes an implied representation that there are sufficient funds on account to cover the check. The leading cases holding that there is such an implied representation, many of them cited by the Plaintiffs, are: *In re Perkins*, 52 B.R. 355 (Bankr.M.D.Fla.1985); *In re Mullin*, 51 B.R. 377 (Bankr.S.D.Ind. 1985); *In re Kurdoghlian*, 30 B.R. 500 (9th Cir.B.A.P.1983); and *In re Tabers*, 28 B.R. 679 (Bankr.W.D.Ky.1983). *See also, In re Burgstaler*, 58 B.R. 508, 512–23 (Bankr.D. Minn.1986) (discussing the split between the courts). This Court also acknowledges that a case from the Bankruptcy Court for the Northern District of Illinois, *In re Almarc Mfg., Inc.*, 62 B.R. 684, 689 (Bankr.N. D.Ill.1986), has taken the position, in dictum, that it is well-established in bankruptcy law that issuing a check constitutes an implied representation, citing the *Mullin* case (although the case was dealing in its entirety with a preference issue under Bankruptcy Code Section 547(c)(4)).

Nevertheless, this Court notes that the courts taking the opposite position, that the issuance of a check is *not* an implied representation that there are sufficient funds to cover the check, have the support of a Supreme Court case. *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). That case held that one could not be convicted under 18 U.S.C. Section 1014, dealing with making false statements to federal banking institutions, for a scheme of check-kiting. In so holding, the Court analyzed the nature of a check and stated that issuing a check "did not involve the making of a 'false statement,' for a simple reason: technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false'". 458 U.S. at 284, 102 S.Ct. at 3091. Thus, the necessary element under Section 1014 of a false statement is missing. By a parity of reasoning, the necessary element under Section 523(a)(2)(A) of a false representation is similarly missing.

The Plaintiffs argue that *Williams* is not on point because it dealt with the construction of a criminal statute. As such, the Court was applying the "rule of lenity" under which criminal statutes are to be strictly construed. Plaintiffs, however, ignore the fact that a similar rule applies to the construction of the exceptions to dischargeability under Section 523. Exceptions to discharge under the bankruptcy laws must be plainly expressed and strictly construed in favor of the debtor. *In re Cross*, 666 F.2d 873, 879–80 (5th Cir.1982); *Mullally v. Carter*, 67 B.R. 535, 536 (N.D. Ill.1986). Exceptions to discharge are strictly construed to further the policy of affording the debtor a broad discharge and an effective fresh start. *In re Levinson*, 58 B.R. 831, 837 (Bankr.N.D.Ill.1986). Thus, the *Williams* analysis is just as relevant to the interpretation of Section 523 as it is to the interpretation of 18 U.S.C. Section 1014.

This Court also notes that the more recent decisions dealing with this question have tended to follow *Williams*. *See e.g., In re Hunter*, 83 B.R. 803 (N.D.Fla.1988); *In re Tuggle*, 86 B.R. 612 (Bankr.E.D.Mo. 1988); *Matter of Ethridge*, 80 B.R. 581 (Bankr.M.D.Ga.1987). Furthermore, the cases supporting the Plaintiffs' position fail to deal with or even cite *Williams*.

This Court, therefore, based upon the overwhelming weight of authority, holds that, as a matter of law, Debtor's issuance of checks to Plaintiffs, without more, does not constitute a false representation within the meaning of Bankruptcy Code Section 523(a)(2)(A). The Microtech Complaint alleges no representations made by Debtor other than those alleged to arise by the

mere issuance of checks by Debtor. Therefore, as a matter of law, the Microtech Complaint fails to state a cause of action and Debtor's Motion to Dismiss it will be granted under Bankruptcy Rule 7012 and Federal Rule of Civil Procedure 12(b)(6).

Unlike the Microtech Complaint, however, the Conduct Complaint, in paragraph 17 thereof, alleges that Debtor made oral representations in addition to the alleged implied representations made merely by issuing the checks. Those oral representations are not governed by this Court's holding that, as a matter of law, the mere issuance of a check is not an implied representation that there are sufficient funds to cover it. Therefore, a further analysis will be made of those oral representations and Debtor's additional arguments.

## THE ORAL REPRESENTATIONS ALLEGED IN THE CONDUCT COMPLAINT

The Conduct Complaint is based upon two checks issued by Debtor on behalf of Hort for supplies furnished by Conduct. The first check, for $6,200, was issued on July 27, 1988. It was returned for insufficient funds. Subsequently, on August 25, 1988, Conduct made a further delivery to Hort. Contemporaneously with that delivery, Debtor made two representations: (1) that the $6,200 check already returned for insufficient funds would be honored; and (2) that the additional check, for $14,625, issued to pay for the August 25, 1988, delivery, was covered by sufficient funds in the account against which it was drawn. Conduct alleges that the $14,625 check was also returned for insufficient funds. Conduct further alleges that it relied on Debtor's oral representations to its detriment and that Debtor knew that those representations were false when made and made them with intent to defraud Conduct.

Debtor directs his further arguments to the legal sufficiency of these allegations by Conduct.

## PROPERTY OBTAINED BY DEBTOR

■ Debtor argues that there is a requirement under Bankruptcy Code Section 523(a)(2)(A) that the Debtor himself obtain property by means of the alleged false representation. Debtor argues that if an entity other than Debtor, such as Debtor's corporation, Hort, obtained the property, the requirements of Section 523 are not met. Debtor bases this argument on language in the *Tuggle* case which emphasized that the property was delivered to the debtor's wholly owned corporation, rather than to the debtor himself. Conduct argues, in response, that *Tuggle* really turned on whether the debtor was acting in his own capacity or as representative of the corporation and turned on whether the debtor there was personally liable for the corporate debt.

This Court's research has found no case explicitly imposing a requirement under Section 523(a)(2)(A) that the debtor be the one to obtain the property. To the contrary, cases have interpreted the phrase, "to the extent obtained by" as requiring only that the creditor suffer an actual pecuniary loss and that that loss result from the fraudulent conduct of the debtor that gave rise to the debt. *See In re Guy*, 101 B.R. 961 (Bankr.N.D.Ind.1988); *Matter of Church*, 69 B.R. 425, 435 (Bankr.N.D. Tex.1987).

Furthermore, the language of the statute itself only requires that property, etc. be obtained by the requisite fraudulent conduct. It does not specify who is to obtain such property. To the contrary, the reference to both the debtor and an insider in Section 523(a)(2)(A) would seem to contemplate that a false representation may be made by the debtor and that an insider receives the property. There is no reason in law or policy to free the debtor of the consequences of his fraud merely because another entity, closely related to the debtor, obtains the property, rather than the debtor. This is particularly so where the debtor benefits from the other entity's obtaining the property. It applies with even greater force where the debtor and the other entity are as closely identified as a principal shareholder and his corporation, as is the case here.

This Court agrees with Conduct that *Tuggle* does not support Debtor's argument. This Court rejects Debtor's argument for dismissing Conduct's Complaint on the basis that Hort, rather than Debtor, received the property.

■ Debtor also argues that he is not personally liable for the debt created by the checks returned for insufficient funds. He makes this argument despite the fact that he has scheduled that debt on his petition. He explains that by claiming that the debt is contingent on the event that he will be held liable on the corporate debts of Hort generally on a theory of piercing the corporate veil.

Plaintiffs argue in response that Debtor should be held liable for his fraudulent acts even if committed while acting in the capacity of a corporate officer or director. They cite *Refrigeration Sales Co. v. Mitchell Jackson, Inc.*, 770 F.2d 98, 103 (7th Cir. 1985); *Trak Microcomputer Corp. v. Wearne Bros.*, 628 F.Supp. 1089, 1093 (N.D.Ill.1985). Microtech also cites an Illinois case, *Nat. Acceptance Co. of America v. Pintura Corp.*, 94 Ill.App.3d 703, 706–07, 50 Ill.Dec. 120, 123, 418 N.E.2d 1114, 1117 (2d Dist.1981). Debtor, in his reply brief, attempts to distinguish those cases by arguing that fraud is not present here as a matter of law because of the lack of reasonable reliance.

As this Court discusses in the section on Reasonable Reliance, these actions are presently at the Motion to Dismiss stage. At that stage, as pointed out by Microtech, the plaintiff must prevail unless there is no conceivable set of facts which could be proven to support plaintiff's claim. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972). As this Court concludes in the section on Reasonable Reliance, Conduct may very well be able to prove a set of facts which would make its reliance on Debtor's alleged oral representations reasonable. Further, Conduct may be able to prove facts which would justify imposing liability on Debtor based on a piercing the corporate veil theory.

This Court also notes that Debtor may be held liable on the checks since he did not sign them in a representative capacity and arguably did not name his principal either. *See* Illinois Revised Statutes, Ch. 26, par. 3–403(2)(a) and (b),; J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, Sec. 13–4, p. 405 n. 20 (2d Ed. West 1980). Illinois law is not clear as to whether (2)(a) or (2)(b) would be applicable. *See J.P. Silvertson & Co. v. Lolmaugh*, 63 Ill.App.3d 724, 380 N.E.2d 520, 20 Ill.Dec. 542, 24 U.C.C.Rep. 1212 (2d Dist.1978) (corporate name written in above signature; parol admissible); *Perez v. Janota*, 107 Ill.App.2d 90, 246 N.E.2d 42, 6 U.C.C.Rep. 357 (1st Dist. 3d Div.1969) (corporate name followed by individual name).

In view of the foregoing, it is clear that the issue of Debtor's personal liability for the debt created by the checks is heavily based upon factual questions. This Court cannot appropriately resolve such factual questions at the Motion to Dismiss stage.

### REASONABLE RELIANCE

■ Debtor next argues that Conduct could not, as a matter of law, have reasonably relied upon Debtor's representations. This argument is based on the fact that, when those representations were made, one of Debtor's checks had already been returned for insufficient funds. Debtor cites *Matter of Holmes*, 52 B.R. 35 (Bankr.W.D. Pa.1985) in support of his argument.

This Court is ruling at the Motion to Dismiss stage. As pointed out in the Microtech brief, a complaint cannot be dismissed unless it appears that the plaintiff can prove no set of facts which would entitle him to relief. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972). Thus, Debtor bears a heavy burden in attempting to negate reasonable reliance, which is an inherently factual question, at the Motion to Dismiss stage.

In that regard, Debtor's reliance upon the *Holmes* case is misplaced. First of all, as pointed out by Conduct in its brief, in *Holmes* seven checks had been returned for insufficient funds, whereas in Con-

duct's situation, only two were so returned. Furthermore, at the time the oral representations were made, only one check had been returned for insufficient funds.

Even more crucially, *Holmes* held only that reliance on any *implied* representation arising from the issuance of a check is unreasonable where checks had previously been returned for insufficient funds. *Holmes* was making this argument in connection with its further holding that "the delivery of a check returned for insufficient funds is by itself insufficient to sustain a determination of nondischargeability...." 52 B.R. at 36–37. This holding is in accord with this Court's holding regarding the issue of implied representation by issuance of a check. It does not even address the question of whether express oral representations can be reasonably relied upon in the circumstance that checks have been returned for insufficient funds. That is precisely the question presented by the Conduct Complaint.

A set of facts could certainly exist which would make Conduct's reliance upon Debtor's August 25, 1988, oral representations reasonable. Conduct should be given the opportunity to establish such a set of facts at trial. Therefore, Debtor's argument based upon lack of reasonable reliance is rejected by this Court.

## CONTEMPORANEOUS ORAL MISREPRESENTATION

■ Debtor argues against use of his two August 25, 1988, oral representations as a basis for nondischargeability under Section 523(a)(2)(A). This argument is based entirely upon the proposition that the representations were made subsequent to the issuance of the $6,200 check on July 27, 1988. As such, Debtor, in effect, offers no argument whatsoever against application of Section 523 to its representation concerning the check issued on August 25, 1988. Therefore, Conduct's Complaint should stand at least in the amount of $14,625.

As far as the $6,200 check issued on July 27, 1988, Debtor's argument is based upon *Matter of Ethridge*, 80 B.R. 581 (Bankr.M.

D.Ga.1987). The court there stated that "Subsequent misrepresentations have no effect upon the dischargeability of a debt, since the false representation could not have been the creditor's reason for the extension of credit." 80 B.R. at 587. The court cites *In re Cokkinias*, 28 B.R. 304 (Bankr.D.Mass 1983).

This Court is not persuaded by the *Ethridge* reasoning. This Court notes that Section 523(a)(2) deals not only with obtaining money, property, or services, but also with obtaining an extension, *renewal*, or *refinancing* of credit. Taking the allegations of the Conduct Complaint as true, Conduct forbore to collect the $6,200 represented by the July 27, 1988, check returned for insufficient funds. It exercised such forbearance solely because of Debtor's oral representation that that check would be honored. At the moment that representation was made, Conduct had the present right to enforce the $6,200 debt against the Debtor. Its forbearance to do so certainly constitutes an extension or renewal of credit to Debtor. In that sense, Debtor's representations regarding that $6,200 check were not subsequent to the operative false representation under Section 523 but were contemporaneous with it and indeed served as the means whereby such extension or renewal of credit was obtained by Debtor.

In this context, the *Ethridge* Court's reliance on *Cokkinias* is misplaced. *Cokkinias* dealt with misrepresentations made in connection with securing a loan. Subsequent misrepresentations were made after the loan was obtained. Those subsequent misrepresentations were made at a time when the creditor did not have the present right to enforce the loan so that those representations could not be said to be the means whereby an extension or renewal of credit was obtained. In this case, however, as explained, Debtor's representation regarding the $6,200 check is alleged to have induced Conduct's forbearance to enforce the $6,200 at the moment the representations were made. As such, it meets the requirements of Section 523(a)(2)(A) that the false representation be the means

whereby the extension or renewal of credit is obtained.

■■■ Debtor also argues that the representation concerning the $6,200 check is insufficient under Section 523 because it relates to future conduct. This Court does not agree. This Court interprets a representation that an overdraft will be covered as one within the ambit of Section 523(a)(2)(A). For example, in *In re Nahas*, 92 B.R. 726, 731 (Bankr.E.D.Mich.1988), the debtor represented "that all overdrafts would be covered within a few days of their payment by the bank." The court held that to be sufficient to meet the false representation requirement of Section 523(a)(2)(A). The court ruled in favor of the debtor only on the grounds that the debtor did not have the requisite intent to deceive. Regarding the Conduct Complaint, Conduct has certainly alleged the requisite intent to deceive and should be given the opportunity to prove it at trial. As far as the nature of the representation regarding the $6,200 check, this Court agrees with the *Nahas* court that the representation is of a type within the ambit of Section 523(a)(2)(A).

Therefore, this Court rejects Debtor's arguments regarding the contemporaneous oral representations allegedly made by Debtor to Conduct on August 25, 1988.

### BAD CHECK STATUTE

■■■ Conduct's Complaint also contains a second count based upon Illinois Revised Statutes, Ch. 38, Section 17–1(B). That statute makes the issuance of a bad check a deceptive practice under certain circumstances. Conduct is alleging a violation of that statute and that such a violation is conclusive as to the existence of a false representation under Section 523(a)(2)(A).

There is a split of authority as to whether state bad check statutes are conclusive under Section 523(a)(2)(A). Cases so holding are represented by *In re Mullin*, 51 B.R. 377 (Bankr.S.D.Ind.1985) (dealing with an Indiana statute). Cases holding to the contrary are exemplified by *In re Tuggle*, 86 B.R. 612 (Bankr.E.D.Mo.1988) (dealing with a Missouri statute).

This Court first notes that each statute would seem to turn on its particular requirements and language. The Illinois statute in question does not even use the term "fraud" or "false representation", but rather describes what it terms a "deceptive practice." This Court would consider that to be of limited relevance to the findings that must be made under Section 523(a)(2)(A).

Furthermore, this Court notes that the second count of Conduct's Complaint does not seek any additional relief based upon the Illinois statute. This Court, therefore, construes the presence of that count as an invitation to this Court to allow Conduct to prevail if it can establish a violation of the Illinois statute, regardless of whether it proves the elements necessary under Section 523(a)(2)(A).

This Court declines that invitation. This Court will insist that Conduct strictly prove, by clear and convincing evidence, each one of the elements necessary to establish nondischargeability under Section 523(a)(2)(A). This Court notes that the Illinois statute would not be given collateral estoppel effects, even if Debtor had been convicted for a violation thereof, unless the issues under the statute are the same as those under Section 523(a)(2)(A). *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987). This Court sees no reason to accord the Illinois statute any greater deference in the absence of proof that Debtor has committed a violation thereof. This Court will, therefore, strike Count II of Conduct's Complaint.

### JUDGMENT

Pursuant to Bankruptcy Rule 9021 and Federal Rule of Civil Procedure 58, this Court hereby renders judgment in this case as follows:

(A) The Motion of the Debtor in this case, Steven L. Horwitz, to Dismiss the Complaint to Determine Dischargeability of Conduct U.S.A., Inc., is hereby denied with respect to Count I thereof; and

(B) The Motion of the Debtor in this case, Steven L. Horwitz, to Dismiss the

Complaint to Determine Dischargeability of Conduct U.S.A., Inc., is hereby granted with respect to Count II thereof and such Count II thereof is hereby stricken.

### JUDGMENT

Pursuant to Bankruptcy Rule 9021 and Federal Rule of Civil Procedure 58, this Court hereby renders judgment in this case as follows:

The Motion of the Debtor in this case, Steven L. Horwitz, to Dismiss the Complaint to Determine Dischargeability of Debt of Microtech international, Inc., is hereby granted and such Complaint is hereby dismissed.