In re Gary Clyde RITZER, Debtor.

BUCKEYE CANDY
COMPANY, Plaintiff,

v.

Gary Clyde RITZER, Defendant.

Bankruptcy No. 2–88–02900.
Adv. No. 2–88–0241.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Oct. 4, 1989.

William D. Meagher, II, Newark, Ohio, for Buckeye Candy Co.

Stephanie M. Vesper, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, Ohio, Robert H. Farber, Jr., Columbus, Ohio, Former Atty., for debtor, Gary Clyde Ritzer.

Charles M. Caldwell, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

R. GUY COLE, Jr., Bankruptcy Judge.

This matter is before the Court following trial of a complaint filed by Buckeye Candy Company to determine the dischargeability of debts owed it by the debtor. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. Sec. 1334(b) and the General Order of Reference entered in this judicial district. This is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. Sec. 157(b)(1) and (2)(I). The following opinion and order shall constitute the Court's findings of fact and conclusions of law.

### I. *Statement of Facts*

In 1982 the debtor, Gary Clyde Ritzer ("Ritzer"), purchased the Utica IGA grocery store in Utica, Ohio (the "IGA Store"). Ritzer began working in the grocery business at the age of 16 and progressed through several positions over the years. In the five years prior to his purchase of the IGA Store, Ritzer served as manager at an IGA grocery in Johnstown, Ohio. Upon purchase of the IGA Store, Ritzer opened a business checking account at The Croton Bank, now known as Heartland Bank (the "Bank").

Buckeye Candy Company ("Buckeye Candy") is a wholesaler of candy, tobacco products and related so-called "front-counter goods." The IGA Store's previous owners had purchased goods from Buckeye Candy and Ritzer saw no reason to change suppliers. Ritzer purchased the majority of the store's inventory from Super Foods

Services of Bellefontaine, which also supplied accounting and bookkeeping services to him for a fee.

The course of business between Buckeye Candy and Ritzer remained the same for the periods relevant to our inquiry. William Tier ("Tier"), a salesman for Buckeye Candy, routinely visited the IGA Store on Monday—one of the 110 accounts he visited every week—to obtain that week's order of goods from the Debtor. Typically, Tier would examine the supply of front-counter goods and, based upon his experience, determine the types and amounts of such goods to be ordered. After completing the order form, Tier would ask Ritzer or one of his cashiers to make any additions or deletions they deemed appropriate; however, they usually relied on Tier's judgment. Tier then would deliver Ritzer's completed order to Buckeye Candy that evening. The next day, on Tuesday, Buckeye Candy delivered the goods to the IGA Store by truck. Payment for the goods delivered on Tuesday was due in cash or by check on the succeeding Monday when Tier arrived to fill out that week's order form. In other words, Ritzer and Buckeye Candy had agreed that Ritzer would deliver cash or a check to Tier seven days after the goods were ordered, or six days following delivery.

Buckeye Candy's challenge to the dischargeability of debts owed it arises from seven checks written by Ritzer between September 9 and November 4, 1985, in the total amount of $10,899.80, on which there were insufficient funds in the Bank for payment to Buckeye Candy. The amount and dates of the checks are as follows:

| | |
|---|---|
| 9/ 9/85 | $ 1,961.29 |
| 9/16/85 | 1,392.88 |
| 9/23/85 | 1,415.44 |
| 10/14/85 | 1,200.21 |
| 10/21/85 | 1,778.16 |
| 10/28/85 | 1,724.10 |
| 11/14/85 | 1,427.72 |
| Total | $10,899.80 |

Checks written by Ritzer on September 30 and October 7, 1985, for front-counter goods apparently were honored by the Bank. Buckeye Candy also asserts that the sum of $5,109.90 is nondischargeable, which represents the amount Ritzer owed Buckeye Candy under a separate, delinquent account. This account included debt for supplies delivered but for which payment had not been received. Ritzer often would make a cash installment on his delinquent account at the same time he tendered a check to pay for a prior week's goods.

The IGA Store was never a profitable enterprise for Ritzer. Any possible profits for the initial year—1982—were consumed by start-up costs. The business showed signs of improvement by 1984 until several competitors, such as Meijers, Big Bear and Kroger stores, opened larger, full-service groceries in Ritzer's general area. From that point on, until the IGA Store closed in 1986 or 1987, Ritzer's business declined steadily.

The summer and fall of 1985 were difficult times for Ritzer, his family, and the business. Ritzer had staked his family's financial future on the success of the IGA Store, but was unable to abate its financial hemorrhaging. As his business losses mounted during this period, Ritzer made every effort to pay his creditors and keep the IGA Store open. He believed, and had been reassured, that the IGA Store was well-located and a viable business. By 1986, however, he realized that the store's financial condition was irreversible and he closed the business.

Debtor's business account at the Bank during September through November, 1985, rarely contained sufficient funds to pay all of the creditors who had accepted checks in payment of goods and services. Ritzer's practice during this time period was to deposit in the Bank the gross proceeds, less daily expenses, from each day's sales while, at the same time, writing checks against that account. Ritzer received a bank statement once, and sometimes twice, a month but rarely checked his bank balance at other times. Ritzer knew, or suspected, that there were insufficient funds in the account to cover each and every check that was written; notwithstanding this fact, he continued to write checks because the Bank usually covered his checks with an overdraft payment.

Moreover, creditors, including Buckeye Candy, would simply resubmit the dishonored check to the Bank or allow him to write a replacement check when sufficient funds were in the account. In fact, depending on when a given check was presented for payment, there often were sufficient funds in the account to pay check payees, *e.g.* the September 30 and October 7 checks to Buckeye Candy were presented for payment at times when there were sufficient funds in the account for the checks to be honored.

Buckeye Candy claims that Ritzer obtained property based upon false pretenses, false representations or actual fraud by presenting the aforedescribed seven checks to plaintiff for payment knowing there were insufficient funds in the bank account to cover any of the checks. Buckeye Candy claims further that the delivery of the checks to it as payment for goods is a false pretense, false representation, or actual fraud (Complaint, Para. 5). Buckeye Candy also claimed entitlement to relief under Sec. 523(a)(6) because Ritzer deliberately and intentionally injured it by purchasing and taking goods without funds to pay for them by presentation of the seven checks. (Complaint, Para. 6). Buckeye Candy apparently abandoned this claim at trial and did not argue it in its post-trial brief.

Ritzer denies that the debts to Buckeye Candy were incurred through any misrepresentation, false pretense, or fraud. Ritzer believed, he says, that the seven checks made payable to Buckeye Candy would be honored by the Bank even if there were insufficient funds in his account. Ritzer knew it was "hit or miss" as to the timing of available funds and the presentment of checks, but he also knew that Buckeye Candy had continued to supply his IGA Store when he had, occasionally, bounced a check to them, and that Buckeye Candy would either re-deposit the check or switch the debt into his "overdue" account. Ritzer denies any intent to deceive Buckeye Candy and says further that plaintiff never relied on a check to deliver the goods covered by that payment.

The issue, then, is whether Ritzer in delivering the seven "NSF" checks to Buckeye Candy, obtained property in a manner that the debts can be classified as nondischargeable under Code Sec. 523(a)(2)(A). Likewise, the Court will address whether Ritzer's conduct violated Code Sec. 523(a)(6) such that the debts are nondischargeable thereunder.

## II. *Legal Discussion*

In order to find a debt nondischargeable under 11 U.S.C. Sec. 523(a)(2)(A), a creditor must prove that (1) the debtor obtained money, property or services through a material misrepresentation; (2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth; (3) the debtor intended to deceive the creditor; (4) the creditor reasonably relied on the false representation; and (5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations. *Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986). A creditor seeking an exception from discharge under Sec. 523(a)(2) must sustain this burden by clear and convincing evidence. *Knoxville Teachers' Credit Union v. Parkey*, 790 F.2d 490, 491 (6th Cir.1986). Clear and convincing evidence is an intermediate standard of proof in which the evidence establishes a fact to a lesser degree than beyond a reasonable doubt, but establishes a fact to a greater degree than by a mere preponderance of the evidence. In other words, clear and convincing evidence consists of evidence which establishes in the mind of the trier of fact "a firm belief or conviction as to the allegation sought to be established." *Hagedorn v. First National Bank of Cincinnati (In re Hagedorn)*, 25 B.R. 666, 668 (Bank.S.D.Ohio 1982); *Hobson v. Eaton*, 399 F.2d 781, 784 n. 2 (6th Cir.1968), *cert. denied* 394 U.S. 928, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969).

### A. *Materially False or Grossly Reckless Representations*

The issuance of a check upon insufficient funds is not, standing alone, a fraudulent misrepresentation sufficient to

sustain a nondischargeable claim under Sec. 523(a)(2)(A). *Heinold Commodities & Securities, Inc. v. Hunt (In re Hunt)*, 30 B.R. 425 (D.Tenn.1983); *Miami Citizens National Bank & Trust Co. v. Weitzel (In re Weitzel)*, 85 B.R. 753, 756 (Bankr.N.D. Ohio 1988); *Tosco Corp. v. Tuggle (In re Tuggle)*, 86 B.R. 612, 614 (Bankr.E.D.Mo. 1988); *City Wholesale Grocery Co. v. Pike (In re Pike)*, 79 B.R. 41, 43 (Bankr.N.D.Ala. 1987). In fact, the uttering of insufficient funds' checks is, according to the United States Supreme Court, an unremarkable feature of everyday commerce and, thus, is not a false pretense or misrepresentation. *See, e.g., Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). It is simply a promise on the part of the drawer to pay the check in the event it is dishonored by the bank. *A.G. Edwards & Sons, Inc. v. Paulk (In re Paulk)*, 25 B.R. 913 (Bankr.M.D.Ga.1982). Thus, in order to establish the initial element of fraud, the plaintiff must prove that the debtor made a representation that the check was good. *Hunt*, 30 B.R. at 438, *Pike*, 79 B.R. at 44.

■ There is no evidence here that Ritzer made any representation that the seven checks were backed by sufficient funds. Undeniably, seven of the nine checks issued during the period in question contained insufficient funds for the checks to be honored. However, Ritzer did not make a false representation in connection with those checks. Nor did Ritzer make representations with gross disregard as to their truth. To the contrary, Ritzer knew that some of the checks he wrote were backed by sufficient funds; for those that were not, he relied upon the Bank to honor, as it had done in the past, checks written upon insufficient funds. To be sure, Ritzer knew that some of his checks might not clear, but he also knew that Buckeye Candy had a course of business with him whereby it would resubmit the checks for payment or place the amount owed in a separate, delinquent account. Therefore, the Court finds that the issuance of the checks was not made upon false pretenses, false representations, actual fraud, or with gross disregard as to the amounts for which they were written.

B. *Intent*

■ In order for the Court to find an intent to deceive, Buckeye Candy must establish actual, as opposed to constructive, intent. *Wilson v. Mettetal (In re Mettetal)*, 41 B.R. 80 (Bankr.E.D.Tenn.1984). Where there is room for an inference of honest intent, the question of fraudulent intent must be resolved in favor of the debtor. *Id.; Norwest Plumbing & Heating v. Constantino (In re Constantino)*, 72 B.R. 231, 235 (Bankr.N.D.Ohio 1987). Here, Ritzer's intent to make good on "NSF" checks clearly evidences a lack of fraudulent intent. *See Hunt*, 30 B.R. at 443; *Save-On Oil Co., Inc. v. Wise (In re Wise)*, 6 B.R. 867, 870 (Bankr.M.D.Fla. 1980).

Likewise, Ritzer's lack of knowledge as to his Bank account's balance is not sufficient to support a finding of nondischargeability. *Charlie Kelton's Pontiac, Cadillac, Oldsmobile & Isuzu Truck, Inc. v. Roberts (In re Roberts)*, 82 B.R. 179 (Bankr.D.Mass.1987). And, as noted by Ritzer's counsel, even where debtors have issued checks knowing there were insufficient funds in the account, courts often have found insufficient proof of intent to defraud under Sec. 523(a)(2)(A). *Wise*, 6 B.R. at 870; *American Bank & Trust Company in Monroe v. Lamb (In re Lamb)*, 28 B.R. 462, 463 (Bankr.W.D.La. 1983); *Montgomery Ward & Company, Inc. v. Pokrandt (In re Pokrandt)*, 54 B.R. 691 (Bankr.W.D.Wis.1985); *Western Petroleum Company v. Burgstaler (In re Burgstaler)*, 58 B.R. 508 (Bankr.D.Minn. 1986).

Viewing the totality of the circumstances, and the record as a whole, the Court concludes that Ritzer knew his account contained insufficient funds at times to cover all checks written, yet he never intented to deceive or defraud Buckeye Candy. He relied, instead, upon the Bank's overdraft policy and Buckeye Candy's willingness to allow deferred payment, with interest, on amounts owed. Ritzer genuinely believed

during the period in question that he could turn the business around, by finding an investment group or through operational changes. He also knew that some of the checks he wrote to creditors, including Buckeye Candy, would be honored, depending on the date of presentment. Ritzer intended to repay all creditors and, for as long as he could, he paid many of them. While the Court does not ever expect a debtor to admit of fraudulent or deceitful intent, the Court found Ritzer's testimony to be credible as to his state of mind during the September through November, 1985, time period. Accordingly, the Court concludes that he never formed any intent to deceive Buckeye Candy; that, in fact, he actually intended—and wanted—to pay this creditor.

## C. *Reliance*

The Court further finds that Buckeye Candy did not reasonably rely upon the seven checks in selling goods to Ritzer. The Court finds persuasive the bankruptcy court's analysis in the case of *Wise*, 6 B.R. at 870, in which Chief Judge Paskay stated as follows in finding a debt nondischargeable:

> The record further reveals that the method of payment utilized in this case, to wit: a check, was always written to cover deliveries actually made during the previous week and it is, therefore, difficult to fathom the role, if any, the particular NSF checks in question played in the [plaintiff's] decision making process to deliver gasoline to the station. Under such circumstances, this court is satisfied that [the plaintiff] has not demonstrated sufficiently, within the meaning of Sec. 523(a)(2), that it reasonably relied on the representation made by the debtor when the debtor signed the NSF check.

Here, as in *Wise*, Buckeye Candy did not rely upon each check as it was written. To the contrary, Tier would take an order on Monday and the goods would be delivered the next day, a Tuesday. Payment of the goods delivered that Tuesday was not due until the following Monday when Tier visited the store to take the order for that week. Thus, Buckeye Candy did not rely upon the check it received the succeeding Monday in making deliveries on the prior Tuesday. Likewise, no money or property was obtained by Ritzer as a result of "NSF" checks since the checks were merely presented in an attempt to pay antecedent debt. *Id.*

The Court further finds that the course of dealing between the parties discloses no reliance by Buckeye Candy. Even on those dates when the Debtor wrote a check on insufficient funds and Buckeye Candy subsequently learned about it, Buckeye Candy continued to supply Ritzer with front-counter goods as it had done for him and the previous owner for several years. If it received an NSF check, Buckeye Candy would resubmit the check to the Bank for payment. On some occasions, the check was honored in that manner. On other occasions, Buckeye Candy simply transferred the amount due to a delinquent account upon which Ritzer would make installment payments whenever he had extra cash. Those installment payments would often be delivered to Tier in cash at the same time a check was written for the prior week's goods. Accordingly, Buckeye Candy did not rely at all, and certainly did not reasonably rely, on any representations made by the Debtor in connection with the placing of an order or sufficiency of funds represented by a check.

The additional sum of money sought to be discharged, the approximately $5,109.90 which was represented by the delinquent account, is dischargeable. It represents antecedent debt for a period extending well before September 9, 1985 and possibly includes amounts incurred after the last check was written on November 4, 1985. It is clearly for antecedent debt that simply was not paid or for which a check was never honored. Buckeye Candy's claim as to this sum of money is no different from the claim of any other unsecured creditor and is dischargeable. Thus, the plaintiff has failed to establish any of the essential elements of Sec. 523(a)(2)(A) with respect to the $5,109.90.

Simply put, Buckeye Candy has failed to establish by clear and convincing evidence an entitlement to nondischargeability under Sec. 523(a)(2)(A) of the Code for the $16,009.70 debt owed it by Debtor. While the Court finds that plaintiff has abandoned its claim under Sec. 523(a)(6), it is clear, nevertheless, that the plaintiff failed to establish that Ritzer has willfully or maliciously injured it or its property. *See Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986) (holding that "willful" means deliberate or intentional); *Perkins v. Scharffe*, 817 F.2d 392, 394 (6th Cir.1987).

For the foregoing reasons, the debts owing by Ritzer to Buckeye Candy in the sum of $16,009.70, or such other sum as is alleged by Buckeye Candy, are hereby determined to be dischargeable. Accordingly, judgment on the complaint is hereby entered in favor of the debtor/defendant and against plaintiff.

IT IS SO ORDERED.