**In re Barbara A. FOX, Debtor.**

**UNION MORTGAGE AND LOAN, Plaintiff,**

v.

**Barbara A. FOX, Defendant.**

**Bankruptcy No. 38001251.
A. P. No. 3800344.**

United States Bankruptcy Court,
W. D. Kentucky.

Aug. 31, 1981.

Michael R. Gosnell, Middletown, Ky., for plaintiff.

John T. Rankin, Louisville, Ky., for defendant.

#### MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

In this case of familial dimension the question is whether or not the debtor, Barbara Fox, knowingly participated in a

scheme to defraud the plaintiff, Union Mortgage and Loan—a scheme conceived by the debtor's husband, executed by her mother-in-law, and possibly carried out with the consent of her father. Because sufficient evidence has been adduced from depositions and a transcript of the debtor's testimony in a state court hearing, neither party believes a trial de novo is necessary. We agree.

Because of the interminable confusion the facts of this case are bound to generate, we provide the reader with a cast of characters, described in terms of their relationship with the debtor when the purported fraud occurred:

Barbara Fox—debtor
James Spears—debtor's father
Mary Spears—stepmother
James Fox—debtor's husband
Leono Fox—debtor's mother-in-law

There is no question that a forgery occurred. On March 17, 1978, four people met at the offices of Union Mortgage to execute a loan. Besides the debtor and her husband, the people who borrowed the money, there were present two people to serve as co-signers to the loan, the debtor's father and a woman impersonating the debtor's stepmother. The stepmother's stand-in was none other than the debtor's mother-in-law.

The debtor's father co-signed the promissory note and executed a mortgage on his residence located at 6212 South Third Street. The debtor's mother-in-law forged the name of the stepmother on the note and the mortgage. The only other security offered were household goods, a 1973 Chevrolet, and $2,500 of the loan proceeds deposited in a Union savings account. The loan itself, before fees, insurance and interest, was for a base amount of $8,378.22, and included the payoff of a debt owed Century Finance, $5,000 to the Foxes, and $2,500 to be held in the Union savings account. The present indebtedness amounts to $9,559.95. Because of the forged mortgage, Union is unable to execute against the home of the debtor's father and stepmother, and is therefore left unsatisfied as to a substantial portion of the security it sought in giving the loan.

The purpose of the loan was to enable the debtor and her husband to purchase a Louisville bar. As a condition to lending them money, Security required that they provide a cosigner and some security. For this they enlisted the aid of the debtor's father, though the testimony as to who actually approached him, the debtor or her husband, appears to conflict. It is undisputed that the debtor's stepmother, who apparently was not on friendly terms with the debtor, did not know that any of this was taking place.

The debtor's father, James Spears, has maintained that he is completely innocent of wrongdoing. He denies knowing that at the time he executed the loan documents he mortgaged his personal residence, and he also asserts that he had never met his daughter's mother-in-law and did not know that she was at the closing for the purpose of forging his wife's signature.

As uncertain of what was happening at the loan closing as the debtor's father was, the debtor's mother-in-law, Leona Fox, understood perfectly the role she was playing. Shortly before the hour of the loan closing, the debtor's husband, accompanied by the debtor, picked up his mother as she was leaving for the day from work. While the three of them were in the car, he asked his mother to sign the debtor's stepmother's name to the loan documents, a task which she was understandably reluctant to perform. He cajoled his mother into signing the papers by telling her that the debtor's father was "putting his house up" and the stepmother, Mary Spears, was not able to attend the closing. After a spirited discussion, and after her son assured her that she would not get in trouble, the debtor's mother-in-law capitulated. She thereafter signed the name "Mrs. Mary V. Spears" to the promissory note and mortgage.

The debtor denies knowing anything about the forgery until after the loan was in default. She testified that during the drive to Union her husband and mother-in-law did not say very much to each other

"except scream a little bit", and that "they were giving each other dirty looks". In spite of this, the debtor claims not to have known that they were arguing over the role that her mother-in-law was to play in securing the loan from Union.

If any villain emerges from these facts, it is the debtor's husband, James Fox. Although the debtor's father professes not to have known that he was mortgaging his house with the surreptitious assistance of his daughter's mother-in-law, the debtor's husband seems to have known full and well that his father-in-law's home was to be used as security and realized the necessity of finding a substitute for the debtor's stepmother. If we are to believe the testimony of everyone involved, the debtor's husband was the chief engineer of this fraud and therefore is clearly culpable. As it is, however, he is neither seeking relief in this court nor is he anywhere to be found. Also, he and the debtor divorced sometime before she filed bankruptcy. We can therefore pass judgment only on the debtor's culpability.

Union bases its objection to the discharge of the debt on Section 523(a)(2)(A) of the Bankruptcy Code. That section provides for the nondischargeability of debts "for obtaining money, property, ... or an extension of credit, by false pretenses, a false representation or actual fraud.".

A claim for false pretenses for false representations will succeed only upon the claimant's showing that the debtor intended to deceive and knowingly and fraudulently made representations upon which the creditor relied to his detriment.[1]

As described by *Collier*,[2] actual fraud "consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said; done or omitted with the design of perpetrating what is known to be a cheat or deception".

The relevant testimony in this case is that of the debtor and her mother-in-law.

The debtor's mother-in-law, Leona Fox, testified that although the debtor never directly asked her to forge the stepmother's name, she was nevertheless present during the conversation about it with her son in the car. Because of this, Leona Fox assumed that the debtor overheard the conversation and knew in advance about the intended forgery. She also testified that at the loan closing the debtor assisted her when she was executing documents in the name of the debtor's stepmother because both the lighting and her eyesight were poor.

The debtor has admitted only that she was in the car with her husband and mother-in-law on the day of the forgery and that she saw her mother-in-law sign some papers at the closing. She vigorously denies knowing the substance of the discussion between her husband and mother-in-law and knowing that her mother-in-law was signing a name other than her own to the loan documents. Though we admittedly have not had the opportunity to observe the witnesses' demeanor firsthand, we cannot, even giving the debtor the greatest benefit of the doubt, find on her behalf.

Throughout the course of her testimony, the debtor gave the impression that when it came to financial matters which involved her and her husband she was inexperienced and unknowledgeable; that her husband was the schemer and dragged her into such matters merely because her signature was required; and that she went unquestioningly along because, as she put it, "my husband always told me I was too dumb to understand, so ... just sign your name and don't ask any questions.".[3]

In spite of the debtor's testimony we must necessarily presume that when one signs her name to a promissory note as joint obligee she knows what she is doing and benefits thereby. The debtor had some sense of why she was applying her signature to the note since she at least acknowl-

---

1. *Com. of Massachusetts v. Hale*, 618 F.2d 143 (1st Cir. 1980); *3 Collier on Bankruptcy*, ¶ 523.08[4], at 523–40 and 523–41 (15th Ed. 1979).

2. Id. at 523–47.

3. Commissioner's Hearing, transcript of testimony of Barbara Fox, pp. 11–12, q. 59.

edged that, although her husband was to be the primary beneficiary of the loan, "Like everything ... he couldn't ever do anything on his own, he always had to have my signature".[4] Our suspicion is further aroused by the fact that the liquor license for the bar was issued in the debtor's name, and that after her husband left her she sold the license for $12,000 to $13,000 to pay off some of her creditors.

■ Further, although it appears that the debtor did not actively solicit the unlawful assistance of her mother-in-law, we find the debtor knew in advance about the planned forgery. It is simply not plausible that the debtor did not at the very least overhear the conversation about the forgery while all three were riding in the car together to Union's office. We infer from this that the debtor shared both in her husband's fraudulent intent and in the perpetration of the fraud upon the bank.[5] Silence or concealment of a material fact can be as reprehensible as an affirmative misrepresentation.[6]

■ The debtor asserts that as a matter of law a prior state court judgment that Union obtained against her on the debt is res judicata on this nondischargeability claim. We dismiss this contention in light of *Brown v. Felsen*,[7] in which the Supreme Court held that the determination of nondischargeability is uniquely a function of the bankruptcy court, involving issues different from those raised in a state court proceeding on the debt, which cannot be barred by application of res judicata.

Upon the foregoing reasoning and authorities,

IT IS HEREBY ORDERED that the debtor's obligation to Union Mortgage and Loan in the amount of $9,559.95 be and the same is nondischargeable under § 523(a)(2). Judgment shall be entered accordingly.

---

4.  Id. p. 28, q. 159.

5.  See e. g. *In re Barrett*, 2 B.R. 296, 305 (E.D. Pa.1980).

6.  *In re Quintana*, 4 B.R. 508 (Bkrtcy.S.D.Fla. 1980); *Dennis v. Thompson*, 240 Ky. 727, 43 S.W.2d 18 (1931).

7.  422 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).