**In re Earl TABERS f/d/b/a Earl Tabers Used Cars, Debtor.**

**James E. TATE, Individually Tate & Woods Used Cars, Plaintiffs,**

v.

**Earl TABERS f/d/b/a Earl Tabers Used Cars, Defendant.**

Bankruptcy No. 5–81–00178.
Adv. No. 5–81–0064.

United States Bankruptcy Court,
W.D. Kentucky.

Jan. 17, 1983.

G. Harvey Boswell, Milan, Tenn., for plaintiffs.

Donald S. Muir, Paducah, Ky., for defendant-debtor.

### MEMORANDUM AND ORDER

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before the Court on complaint of James E. Tate, individually, and Tate & Woods Used Cars, creditors, by counsel, seeking a determination of nondischargeability of certain debts due and owing by the debtor on the date of the filing of the petition for relief, pursuant to 11 U.S.C. § 523(a)(2)(A).

In essence, the issue here presented is whether checks issued in replacement of NSF checks and later dishonored constitute a new and dischargeable debt where the original underlying transaction would have been found to be nondischargeable.

The facts are virtually uncontroverted and may be summarized as follows:

The defendant-debtor was engaged in the sale of used automobiles, whereby he acquired vehicles from the plaintiffs and sold them through his wholly-owned used car outlet. The regular business practice of these parties was that plaintiffs would deliver a vehicle to the debtor, the debtor would sell the vehicle, and then issue his check to plaintiffs. The plaintiffs would then deliver title in the name of the ultimate purchaser to the debtor, and debtor would physically deliver the title to that purchaser. In some instances, a "draft" method was utilized. At such times the debtor would purchase a vehicle from an auction house, for instance, and use a draft on the plaintiffs' account as payment therefor. Upon debtor's sale of the vehicle to a purchaser, the debtor would secure title in the purchaser's name from the plaintiffs upon delivery of debtor's check in payment.

During the period commencing in 1978 and continuing thereafter, a series of checks to the respective plaintiffs were returned by debtor's bank for insufficient funds. It is acknowledged by the debtor that he received payment in full from the purchasers, deposited said funds into his account, and thereafter issued his check to the plaintiffs and received title for delivery to the purchaser.

The total of the checks issued to the respective plaintiffs and ultimately dishonored was $59,050.00 to James E. Tate and $21,042.00 to Tate & Woods Used Cars. After these checks had been refused by the debtor's bank upon two presentments, demand was made by the plaintiffs to pay their respective accounts in full. Replacement checks were issued by the debtor in satisfaction of the plaintiffs' claims, and these checks were returned by the debtor's bank endorsed "account closed." Debtor admits that the original funds received from the purchasers were deposited into his account in the Peoples Bank of Murray, and that the replacement checks were drawn on an account in the Bank of Murray.

Section 523(a)(2)(A), 11 U.S.C., provides:
"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ."

■ "A claim for false pretenses or false representations will succeed only upon the claimant's showing that the debtor intended to deceive and knowingly and fraudulently made representations upon which the creditor relied to his detriment." *In Re Fox,* 13 B.R. 827, 829 (Bkrtcy.W.D.Ky.1981).

"As described by *Collier,* actual fraud 'consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.' " *In Re Fox, supra,* quoting 3 *Collier on Bankruptcy,* ¶ 523.08[5] (15th Ed.1979).

■ Further, ". . . the issuance of a check carries an implied representation by the issuer that there are funds available to honor the check when presented, and the one who issues the check knowing that he has no funds to cover the check is just as guilty of making false representations as one who actually makes such representations expressly, either orally or in writing." *In Re Kurant,* 3 BCD 832, 14 C.B.C. 783 (M.D.Fla.1977).

"The two elements on which the 'NSF' check cases focus are: (1) was there fraud or an intentional wrong by the debtor; and (2) did the debtor obtain money, property, services, or an extension, renewal or refinance of credit because of the debtor's issuing the check; i.e., did the creditor reason-

ably rely on the validity of the check?" See *Matter of Anderson,* 10 B.R. 296, 297–298 (Bkrtcy.W.D.Wis.1981).

"The standard used to determine whether the fraud or an intentional wrong is of sufficient degree to bar discharge of a debt varies. A finding that 'at the time of the issuance of the checks, the bankrupt knew, and the Applicant herein, did not know, that there were not sufficient funds in the bank account for the purpose of honoring those checks upon presentation' was sufficient to meet the fraud or intentional wrong required to bar discharge in *In Re Salvatore Crivello,* 1 B.C.D. 168 (N.J.1974)." *Matter of Anderson, supra,* at 298.

■ There is little question but that the original transactions by and between the parties would result in the debt being found to be within the nondischargeability provisions of § 523. The debtor alleges, however, that the issuance of the replacement checks and their acceptance by the plaintiffs negates the nondischargeable nature of the original debt and constitutes a novation or alternatively that the checks were issued as "hold" checks for the previously created debt. Debtor urges that at the time of the issuance of these "hold" checks, there was neither fraud nor consideration, and therefore, said replacement checks "bear the same weight as a promissory note, unsecured."

The replacement checks in issue do not bear any notation on their face indicating that they were in the nature of "hold" checks, and further, these exhibits of record (Tabers' Deposition, Exhibits # 1 and # 2) reflect presentation to the debtor's bank for payment within a reasonable period of time after the date of issue. Plaintiffs strongly deny that these replacement checks were to be held for any time period, an understanding buttressed by the early presentment. Further, defendant's claim that these replacement checks were "hold" checks lacks credibility where, as here, the account upon which they were drawn was in fact closed.

■ "In the civil law, there are three kinds of novation: Where the debtor and creditor remain the same, but a new debt takes the place of the old one; where the debt remains the same, but a new debtor is substituted; where the debt and debtor remain, but a new creditor is substituted. *Wheeler v. Wardell,* 173 Va. 168, 3 S.E.2d 377, 380." *Black's Law Dictionary* (4th Ed. 1968), p. 1213.

■ "In Kentucky, the rule is that a renewal note does not extinguish the original obligation unless there is a novation." *Cantrill Construction Company v. Carter,* 418 F.2d 705, 707 (6th Cir.1969), citing *Porter v. Bedell,* 273 Ky. 296, 298, 116 S.W.2d 641 (1938).

It has been found that intent is the essential element in proving a novation. See *Cantrill Construction Company, supra,* at 707. Further, *Truscon Steel Co. v. Thirlwell Elec. Co.,* 265 Ky. 414, 96 S.W.2d 1023 (1936), elaborates by stating that a "novation is the substitution of a new obligation for an old one *with the intent to extinguish the old one,* or the substitution of a new debtor for an old one, *with the intent to release the latter,* or the substitution of a new creditor, *with the intent to transfer the rights of the old one to him."* (Emphasis added.) *Id.* at 417, 96 S.W.2d at 1025.

In the facts here presented, at all times the debtor and the creditors remained the same, the sole issue being whether a new debt replaced or extinguished the old one. Without the requisite intention, it is apparent that the issuance of the replacement checks was not the creation of a new debt but rather a substitute method of payment. The return of the replacement checks marked "account closed" was therefore simply a further failure of payment.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, Rules of Bankruptcy Procedure.

WHEREFORE, in view of the foregoing and the Court being otherwise sufficiently advised,

IT IS ORDERED AND ADJUDGED that the debts owing to James E. Tate and Tate & Woods Used Cars in the respective amounts of $59,050.00 and $21,042.00 be and the same hereby are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). This is a final order.

A copy of this Memorandum and Order is mailed to Harvey Boswell, counsel for plaintiffs; and to Donald S. Muir, counsel for debtor.