In re Maurice A. ROBERTS, Debtor.

CHARLIE KELTON'S PONTIAC, CADILLAC, OLDSMOBILE & ISUZU TRUCK, INC., Plaintiff,

v.

Maurice A. ROBERTS, Defendant/Debtor.

Bankruptcy No. 87–40047JFQ.

Adv. No. 87–4034.

United States Bankruptcy Court, D. Massachusetts.

Nov. 19, 1987.

Timothy J. Wells, White River Junction, Vt., for Charlie Kelton's Pontiac, Cadillac, Oldsmobile & Isuzu Truck, Inc. plaintiff.

Peter Stern, Springfield, Mass., for Maurice A. Roberts defendant/debtor.

## OPINION

JAMES F. QUEENAN, Jr.,
Bankruptcy Judge.

This case presents the question of whether the purchase of goods with a check returned for nonsufficient funds creates a nondischargeable debt under 11 U.S.C. § 523(a)(2). The question is troublesome despite the many times it has been before the courts. We hold that the debt is dischargeable because of the particular circumstances present, and we set forth our

findings of fact and rulings of law pursuant to BANKR.R. 7052.

## I. FINDINGS OF FACT

The debtor, Maurice Roberts (the "Debtor"), was the treasurer, clerk and a director of Automarket, Inc. ("Automarket"), a Massachusetts corporation engaged in the purchase and sale of new and used motor vehicles. His son was Automarket's president. Through Automarket and other business entities the Debtor had done business for many years with the Plaintiff through its principal, a Mr. Pollock ("Pollock"). The Plaintiff's name was then "Pollock Pontiac, Cadillac, Oldsmobile & Isuzu Truck, Inc."; it changed its name after Pollock's death.

On March 5, 1986, the Debtor purchased a 1986 Cadillac from the Plaintiff on behalf of Automarket, dealing again with Pollock. He obtained delivery of the car and assignment of ownership into Automarket's name in return for a $22,254.00 check of Automarket; the check was signed by the Debtor as an Automarket officer, dated March 5th, and payable to the Plaintiff. The Debtor had previously purchased cars for Automarket from the Plaintiff with uncertified checks which had cleared the bank. This check, drawn on the Automarket account with Lee Savings Bank, was later returned by the bank because of nonsufficient funds.

The Debtor made no attempt to ascertain the balance in the account before negotiating the check. At the time of drawing the check, he knew that the account was the principal checking account used by the corporation for its deposits and withdrawals. He had no knowledge, however, of the current balance of the account. As he then knew, a number of Automarket's checks had been returned in the months before this purchase. The Debtor, nevertheless, "assumed" that there would be funds in the account by the time the check cleared, and "wasn't concerned about it." On April 2, 1986 the Debtor gave Pollock another Automarket check for the same car, but this check was also returned by the bank. The account on which the March 5th check was drawn had a balance which fluctuated during March from a low of $2.67 on March 31st to a high of $41,779.01 on March 6th. For example, on March 3rd the balance was $29,696.15; on March 5th the balance was $5,074.56. After March 6th, the highest balance was $26,830.11, on March 13th.

█ We conclude that the Debtor issued the check dated March 5, 1986 in reckless disregard of whether or not there was then, or would be at time of presentment, a sufficient balance in the account. The Plaintiff has not, however, sustained its burden of proving that the Debtor drew the check with the intent of deceiving or defrauding the Plaintiff. Although the Debtor was negligent to the point of recklessness, his intent was an honest one; to pay for the car. The Court makes this conclusion without regard to whether the Plaintiff's burden of proof is preponderance of the evidence or clear and convincing evidence, concerning which there is a split in the cases. *See Stern v. Dubian (In re Dubian),* 77 B.R. 332, 338–39 (Bankr.D. Mass.1987). The Plaintiff has met neither standard.

## II. THE DEBTOR'S LIABILITY

The Plaintiff alleges in its complaint that the Debtor individually purchased the car and that the Debtor is individually indebted for the purchase, requesting that the debt be declared nondischargeable under 11 U.S. C. § 523(a)(2). The complaint was never amended to allege a corporate purchase and to assert liability on a theory of tort rather than contract. The parties tried the case, however, on a tort theory. They requested that the Court adjudicate both the question of the Plaintiff's liability in tort as well as the dischargeability of any such debt, and the Court will do so.

█ The Debtor, as the treasurer of Automarket, owed the Plaintiff a duty of using reasonable care to ascertain that the balance in the account was sufficient. He made absolutely no attempt to do this despite the fact that he was the corporation's chief financial officer. His negligence, indeed recklessness, has damaged the Plaintiff in the amount of the check, $22,254.00.

The Debtor is therefore liable to the Plaintiff in that amount under principles of negligence.

The Plaintiff, however, seeks to establish the Debtor's liability on a fraud or misrepresentation theory in order to have the liability declared nondischargeable under 11 U.S.C. § 523(a)(2)(A) which exempts from discharge in bankruptcy "any debt for property ... to the extent obtained by ... false pretenses, a false representation or actual fraud." The "debt for property" would seem to be that of Automarket, not the Debtor, so that the application of § 523(a)(2)(A) appears doubtful. Because it makes no difference to our decision, however, we will assume that the statute includes an agent's liability under a tort theory of misrepresentation or fraud, and that the Debtor would be so liable if such a claim is meritorious. The pivotal question concerns the dischargeability of that liability.

## III. DISCHARGEABILITY

A. *Issuance of Check as Misrepresentation of Fact Under § 523(a)(2)(A)*

The Plaintiff argues that the Debtor's act of signing and delivering the check of March 5th constituted the following implied representation of fact within the scope of § 523(a)(2)(A): that there were then sufficient funds in the account to cover the check, after taking into account outstanding checks, or, at the very least, that the Debtor had the present intent to cover the check with the required deposit if the present balance was insufficient. Whether the act of issuing a check constitutes an implied representation of fact is not free from doubt.

The inference to be drawn from a check was before the court in *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). The defendant there had engaged in a check kiting scheme in which he drew large checks on bank accounts having only nominal balances. He then would deposit these checks in other banks in order to obtain sufficient balances in the depository banks for the issuance of further checks drawn on them. The act of making such a deposit, the government charged, was a violation of 18 U.S.C. § 1014 which makes it a crime to "knowingly mak[e] any false statement or report" for the purpose of influencing certain federally insured banks to grant credit. The court held that a check, because it contains no factual assertions, is not a "statement or report" within the meaning of the statute. The government argued that in negotiating the check, the defendant impliedly represented that the balance at the drawee bank was sufficient to cover the check. The Court observed that it was equally plausible for a check to be considered an implied promise to have sufficient funds on deposit at time of presentment. *Williams*, 458 U.S. at 286 n. 7, 102 S.Ct. at 3092, n. 7. The court declined to make an expansive reading of the statute to include the implied representation urged by the government. It did so, however, because of considerations not germane to the present case: the particular wording of the statute before it, the principle of lenity in the interpretation of a criminal statute, and the legislative history of 18 U.S.C. § 1014 which contained no indication that Congress intended to include such a check kiting scheme within the sweep of the statute. The court in *Williams* was dealing with a statute which speaks of "statement or report" rather than one referring to "false pretense" or "false representations" which are more apt phrases for describing the *act* of negotiating a check. The history of § 523(a)(2)(A) is also quite different. At the time of the passage of the Bankruptcy Reform Act of 1978, there were a number of decisions on the books holding that § 17a(2) of the Bankruptcy Act of 1898, which contained language virtually identical to that in § 523(a)(2)(A), covered implied misrepresentations made in the negotiation of a check. *See, e.g., Sanitation Recycling, Inc. v. Jay Peak Lodging Association*, 428 F.Supp. 1022 (D.Vt.1977); *Richard Farm Bureau v. Durbin*, 8 Ohio App.2d 312, 222 N.E.2d 315 (1966); *Blue Bonnet Creamery, Inc. v. Gulf Milk Association*, 172 So.2d 133 (La.App.1965). *See also In re Rea Brothers*, 251 F. 431

(D.Mont.1917) (Although check cannot be a false "statement" barring discharge, it can be a false representation excepting from discharge the underlying debt). Nothing in the legislative history of § 523(a)(2)(A) indicates a Congressional purpose to change the results of this case law.

Some decisions, nevertheless, hold that *Williams* controls questions concerning bad checks under § 523(a)(2)(A). *See Ray E. Friedman and Co. v. Jenkins (In re Jenkins),* 61 B.R. 30 (Bankr.D.N.D.1986); *Timberline Systems, Inc. v. Hammett (In re Hammett),* 49 B.R. 533 (Bankr.M.D.Fla. 1985); *Heinold Commodities & Securities, Inc. v. Hunt (In re Hunt),* 30 B.R. 425 (M.D.Tenn.1983). Other decisions, without reference to *Williams,* find an implied representation in the act of check issuance. *See Sun Bank of Tampa Bay v. Perkins (In re Perkins),* 52 B.R. 355 (Bankr.M.D. Fla.1985); *Frits Loonsten, Inc. v. Mullin (In re Mullin),* 51 B.R. 377 (Bankr.S.D.Ind. 1985); *Bear Stearns & Co. v. Kurdoghlian, (In re Kurdoghlian),* 30 B.R. 500 (9th Cir. BAP 1983); *Tate v. Tabers (In re Tabers),* 28 B.R. 679 (Bankr.W.D.Ky.1983); *Monarch Tile Manufacturing Co. v. Anderson (In re Anderson),* 10 B.R. 296 (Bankr.W.D.Wisc.1981). We need not, however, decide this question because of the significance of the Debtor's lack of intent to deceive, to which we now turn.

B. *Requirement of Intent to Deceive Under § 523(a)(2)(A)*

The wording of § 523(a)(2)(A) is the same as that of its predecessor, § 17a(2) of the Bankruptcy Act of 1898, except for the addition of the phrase "or actual fraud" made in § 523(a)(2)(A). Does this mean that an intent to deceive is not required for there to be a "false pretense" or "false representation" within the meaning of the statute? The answer is clearly "no". Both the House and Senate reports state that § 523(a)(2)(A) modifies only "slightly" § 17a(2) of the prior Act by the addition of "actual fraud" as a ground for discharge and by a few other changes. H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 78 (1978), U.S.Code Cong. & Admin.News

1978, p. 5787. Statements made on the floor of the House and the Senate, furthermore, express no intention to change existing case law. 124 Cong.Rec. H11096 (daily ed. September 28, 1978); 124 Cong.Rec. S17412, (daily ed. October 6, 1978). The statement of Representative Edwards in the House expresses a specific intent to codify existing case law as exemplified by *Neal v. Clark,* 95 U.S. (5 Otto) 704, 24 L.Ed. 586 (1877), requiring bad faith or moral turpitude in a finding of fraud leading to a nondischargeable debt. We conclude that the phrase "actual fraud" was added to the statute in order to add a separate ground for discharge, such as concealment by a fiduciary. *See Haddad v. Haddad (In re Haddad),* 21 B.R. 421 (9th Cir. BAP 1982).

We have found that the Debtor was negligent to the point of recklessness in issuing the check, but that he did not intend to deceive or defraud the Plaintiff. Exceptions to discharge are to be strictly construed. *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). It was well established under § 17a(2) of the prior Act, and the case law appears uniform under § 523(a)(2)(A), that the false pretense or false representation must be made with an intent to deceive or defraud in order for the statute to apply. *See, e.g., Massachusetts v. Hale,* 618 F.2d 143 (1st Cir.1980); *Public Finance v. Taylor (In re Taylor),* 514 F.2d 1370, 1373 (9th Cir.1975); *Brown v. Buchanan (In re Brown),* 419 F.Supp. 199, 202 (E.D.Va.1975); *Western Petroleum Co. v. Burgstaler (In re Burgstaler),* 58 B.R. 508, 514 (Bankr.D.Minn.1986); *Heinold Commodities & Securities, Inc. v. Hunt (In re Hunt), supra,* at 436; *Eastern Food Service, Inc. v. Leger (In re Leger),* 34 B.R. 873, 876 (Bankr.D.Mass.1983); *Thorpe Credit and Thrift Company v. Pommerer (In re Pommerer),* 10 B.R. 935, 939 (Bankr.D.Minn.1981). *See also Ames v. Moir,* 138 U.S. 306, 11 S.Ct. 311, 34 L.Ed. 951 (1891); *Neal v. Clark,* 95 U.S. (5 Otto) 704, 24 L.Ed. 586 (1877) (establishing standard under predecessors to 1898 Act).

 Issuance of a check in reckless disregard of the balance in the account, but without the intent to deceive, is not enough. *Energy Marketing Corp. v. Sutton (In re Sutton)*, 39 B.R. 390, 397 (Bankr.M.D.Tenn.1984); *Jack Master, Inc. v. Collins (In re Collins)*, 28 B.R. 244, 248 (Bankr.W.D.Okl.1983). Statements made in reckless disregard of their truth, to be sure, can be some evidence of an intent to deceive, and such statements may well be sufficient of themselves for the fact finder to conclude that the party had the requisite intent. Thus in *In re Coughlin*, 27 B.R. 632 (1st Cir. BAP 1983), the former appellate panel of this Circuit ruled in the context of a § 523(a)(2)(B) action that a debtor's reckless completion and use of a financial statement containing material errors was sufficient evidence for the trial judge to conclude that he had an intent to deceive. *Coughlin* does not, however, remove the requirement that such intent be present. Intent must almost always be inferred from the totality of circumstances. *H.C. Prange Co. v. Schnore (In re Schnore)*, 13 B.R. 249, 254 (Bankr.W.D. Wis.1981); *Eastern Food Service, Inc. v. Leger (In re Leger)*, *supra* at 876. To the extent that the Ninth Circuit in *Houtman v. Mann (In re Houtman)*, 568 F.2d 651 (9th Cir.1978) ignored the distinction between sufficiency of evidence to support a finding of intent and the intent itself, we respectfully disagree with that decision.

*C. Section 523(a)(2)(B)*

 The foregoing discussion concerning the requirement of an intent to deceive applies equally to § 523(a)(2)(B), which bars from discharge certain debts created through the creditor relying upon a "statement in writing ... that is intentionally false ... respecting the debtor's ... financial condition." A check, in any event, is not such a statement. *Obrist v. Christensen*, 337 F.2d 220 (9th Cir.1964); *Robinson v. J.R. Williston & Co. (In re Robinson)*, 266 F. 970 (1st Cir.1920); *Jack Master, Inc. v. Collins (In re Collins)*, *supra* at 247; *A.G. Edwards & Sons, Inc. v. Paulk (In re Paulk)*, 25 B.R. 913, 917 (Bankr.M.D.Ga. 1982). Whatever implication may be drawn from its issuance, the check itself is merely an order upon the drawee bank. Even if implications from its issuance are considered despite the requirement that the "statement" be in writing, the implication would appear to pertain only to one bank account, not the debtor's "financial condition."

A separate judgment allowing the claim and declaring it dischargeable shall issue.