**In re Lon E. STACEY, Debtor.**

**ALTUS BANK, Plaintiff,**

v.

**Lon E. STACEY, Defendant.**

**Bankruptcy No. 89–00068.**
**Adv. No. 89–0036.**

United States Bankruptcy Court,
S.D. Alabama.

Sept. 14, 1989.

Michael Mark, for debtor.

Don Davis, for Altus Bank.

## ORDER

GORDON B. KAHN, Chief Judge:

This matter having come on for hearing upon the complaint of Altus Bank to determine dischargeability of debt; due notice of said hearing having been given; having appeared were the debtor, his attorney, Michael Mark, and Don Davis for Altus Bank; and testimony having been given and evidence received and the matter taken under submission; now, therefore, the Court finds, concludes, and orders as follows:

## FINDINGS OF FACT

1. On January 12, 1989, Lon E. Stacey (hereinafter referred to as the "debtor") commenced this Chapter 7 proceeding.

2. The debtor maintained a checking account with Altus Bank (hereinafter referred to as "Altus Bank") for use in his business, Express Car Care. The debtor also maintained a joint checking account with his wife at Central Bank of the South (hereinafter referred to as "Central Bank").

3. From November 24, 1987 to December 17, 1987, the debtor tendered to Altus Bank and deposited into his account four checks totaling $11,850.00 drawn on the Central Bank account. All four checks were subsequently returned and not paid by Central Bank as a result of insufficient funds. In the meantime, Altus Bank honored checks drawn by the debtor on his account resulting in an overdraft or negative balance due to the four Central Bank checks being returned unpaid.

4. At the time each of the four checks were written, the debtor and his wife were separated. He kept the actual checkbook on the Central Bank account along with a running account of the deposits and checks written in connection with said account. The monthly account statements went to the wife. The debtor would ask his wife to transfer money into the Central Bank ac-

count if the balance was insufficient to cover the checks drawn and deposited into Altus Bank.

5. As a result of the Altus Bank account being overdrawn, the debtor met with Mr. Virgil Peacock, an assistant vice president and security officer of Altus Bank, on January 5, 1989. On January 7, 1989, the debtor paid $914.95 of the overdraft indebtedness.

6. On May 17, 1988, the debtor met with Mrs. Rosalind Speed–Temple, the collections department supervisor at the law firm of Sirote & Permutt, P.C., which is also the law firm representing Altus Bank. During the meeting the debtor admitted that he knew the checks drawn on the Central Bank account were not good at the time they were written and deposited into the Altus Bank account.

7. On May 23, 1988, Altus Bank filed a multi-count suit against the debtor in the Circuit Court of Mobile County, Alabama, Civil Action No. CV–88–1567. On July 22, 1988, a consent judgment was entered in favor of Altus Bank and against the debtor in the amount of $12,073.00 plus costs of court pursuant to a joint "Stipulation For Entry Of Consent Judgment" entered into between the Bank and the debtor. There were no findings of fact or conclusions of law contained in the Order of the Circuit Court, nor reference to any particular count contained in the suit.

## CONCLUSIONS OF LAW

The Bank is seeking to prevent the discharge of its debt pursuant to § 523(a)(2)(A) of the Bankruptcy Code on the grounds of collateral estoppel or, in the alternative, that the acts complained of fall within the parameters of such Code section. We shall consider the theory of collateral estoppel first since a determination that collateral estoppel applies will pretermit an analysis of the evidence.

In support of this claim, the Bank relies upon state court proceedings that resulted in a consent judgment in its favor against

the debtor. In this Court, the Bank introduced certified copies of the state court "Stipulation for Entry of Consent Judgment" and the Case Action Summary sheet showing that a consent judgment was entered.

In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court noted that collateral estoppel could, in a bankruptcy dischargeability context, bar relitigation of facts actually and necessarily decided in a prior suit. However, that case concerned res judicata only [1] and the Court declined to address the question directly with regard to collateral estoppel. *Id.* at 139 n. 10, 99 S.Ct. at 2213 n. 10. The Court held that the bankruptcy court was not to be confined to a review of the judgment and record of a prior state court proceeding when considering dischargeability of a debt. *Id.* at 138–139, 99 S.Ct. at 2212–2213.

The Eleventh Circuit has held that collateral estoppel or issue preclusion may be applied in a dischargeability setting to prevent relitigation of certain "issues at stake". *In re Halpern*, 810 F.2d 1061 (11th Cir.1987). The Court pointed out that the " 'issues at stake' . . . were the detailed factual findings in the state court consent judgment." Even when the consent judgment contains detailed findings of fact, the bankruptcy court must make an independent determination concerning the dischargeability of the debt. *Id.* at 1063–1064.

Though the state court complaint in the present case alleged in part that the debtor acted fraudulently, the consent judgment entered by the state court upon stipulation by the parties contains no factual determinations. The state court judgment simply states: "Judgment by consent for plaintiff and against defendant, Lon E. Stacey for the sum of $12,073.00 and costs of Court." The stipulation upon which the consent judgment is based reads as follows:

---

1. The Court refused to apply res judicata in a bankruptcy dischargeability setting for deceit, fraud, and malicious conversion, stating that that was the "type of question Congress intended that the bankruptcy court would resolve." *Id.* at 138, 99 S.Ct. at 2212.

COMES NOW the parties to this action, by and through their respective attorneys, and move this Honorable Court for an entry of consent judgment in favor of Plaintiff and against Defendant in the sum of $12.073.00, plus costs of court.

There is nothing in the judgment against the debtor that suggests that the state court determined the character of the debt. The only issue the state court judgment precludes relitigation of is whether the debtor owes the debt and the amount thereof, which he does not dispute. Accordingly, on the issue of whether the debtor incurred the debt through means of actual fraud, false pretenses, or false representations, this Court cannot apply collateral estoppel to the state court judgment. *Accord, Balbirer v. Austin,* 790 F.2d 1524 (11th Cir.1986); *In re Allman,* 735 F.2d 863 (5th Cir.1984); *In re Poston,* 735 F.2d 866 (5th Cir.1984); *In re Ethridge,* 80 B.R. 581 (Bkrtcy.M.D.Ga.1987).[2]

Because the state court judgment cannot be considered as collateral estoppel in this case, the Court must make independent findings regarding the factual basis of the incurring of the debt. Section 523(a)(2)(A) provides that:

(a) A discharge under §§ 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

.  .  .  .  .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

■ For the issuance of a N.S.F. check to be a nondischargeable debt, the plaintiff must prove by clear and convincing evidence: (1) a false representation or representations by debtor; (2) debtor's knowledge of the falsity of the representation;

(3) debtor's intention and purpose to deceive the creditor; (4) creditor's reliance on such representations; and (5) creditor's losses, proximately caused by debtor's false representations. *In re Hammett,* 49 B.R. 533 (Bkrtcy.M.D.Fla.1985); *In re Paulk,* 25 B.R. 913 (Bkrtcy.M.D.Ga.1982).

■ When a person issues a check, he impliedly represents that there are sufficient funds available to honor the check when presented for collection and one who issues the check knowing that he has no funds to cover the check is just as guilty of making false representations as one who actually makes such representations expressly, either orally or in writing. *In re Perkins,* 52 B.R. 355 (Bkrtcy.M.D.Fla.1985) citing, *In re Tabers,* 28 B.R. 679 (Bkrtcy. W.D.Ky.1983). In the case at hand, the debtor issued the four checks at a time when he knew or should have known that there were no funds to cover the checks, thus meeting elements one and two.

■ As to the third element, however, this Court is not satisfied that the debtor intended to defraud Altus Bank at the time the checks were drawn and deposited. The debtor testified that he would speak with his estranged wife and ask her to place sufficient funds in the Central Bank account to cover the checks, although it is not clear from the testimony whether this request was made before or after the checks had been written. Further, debtor made an attempt to repay Altus Bank within a month after the resulting overdrafts. While the evidence clearly indicates that the debtor gave Altus Bank checks which he knew were not backed by sufficient funds at that moment, it does not demonstrate that he had any specific intent to deceive the Bank. Because of the above finding, it is not necessary to reach a decision on the fourth and fifth elements. Accordingly, the debt owed to Altus Bank is dischargeable. Now, therefore, it is

---

**2.** Plaintiff argues that under *Marrese v. American Ac. of Orthopaedic Surg.,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), this Court is to apply state law in determining if issue preclusion applies. While we agree that issue preclusion has application in a bankruptcy court, fed-

eral law is to be applied in determining if it applies in a particular case. *See, Brown,* 442 U.S. at 138, 99 S.Ct. at 2212–2213; *Marrese,* 470 U.S. at 386, 105 S.Ct. at 1335; *Key v. Wise,* 629 F.2d 1049, 1061–1064 (5th Cir.1980).

## ORDER

ORDERED, that the relief sought in the complaint of Altus Bank, a federal savings bank be, and it hereby is, DENIED; and it is further

ORDERED, that the debt owed Altus Bank, a federal savings bank be, and it hereby is, declared DISCHARGEABLE; and it is further

ORDERED, that Altus Bank, a federal savings bank, its servants, agents or employees and all persons acting in its behalf, be and hereby are ENJOINED from taking any steps to collect the aforesaid debt from the above-named debtor.