**In re Sylvester M. WAGENTI, Debtor.**

**DESIGNED FLOORING DISTRIBUTORS, INC., Plaintiff,**

v.

**Sylvester M. WAGENTI, Defendant.**

**Bankruptcy No. 89–23198–BKC–SMW. Adv. No. 89–0455–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Feb. 7, 1990.

Jon Jay Ferdinand, Fort Lauderdale, Fla., for creditor.

Alan L. Levine, Fort Lauderdale, Fla., for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came before the court upon the complaint of Designed Flooring Distributors, Inc. (the "creditor") against Sylvester M. Wagenti (the "debtor") to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(A), and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

Jurisdiction is vested in this court pursuant to 28 U.S.C. § 157(a), (b) and § 1334. This is a core proceeding in which the court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(I).

Commencing in November, 1985, the debtor engaged the services of the creditor relative to the supplying of flooring materials to the debtor's business, Boca Raton Rug Company (hereinafter "the company"). The materials were purchased by the debtor on an open account. By June 17, 1987, the account of the debtor reflected a balance owed of $21,805.93. At that time, the creditor ceased to supply any further flooring materials until payment was made by the debtor to reduce the balance owed. On June 18, 1987, knowing that his account was overdrawn, the debtor personally delivered a check in the amount of $4,000.00 to the creditor. Subsequently, on June 29, 1987, again knowing that his account was overdrawn, the debtor delivered a second check in the amount of $5,000.00. Upon receipt of the first check, the creditor began once again to supply materials to the debtor.

The checks were subsequently dishonored and the creditor filed suit in state court against the debtor and his company seeking to recover the amounts owed. On June 17, 1988, the Seventeenth Circuit Court in and for Broward County, Florida, entered a final judgment adopting the Joint Stipulation and Settlement Agreement entered into between the creditor and the debtor. Under the terms of the Joint Stipulation and Settlement Agreement, the debtor's company was held liable for the amounts owed to the creditor prior to the issuance of the two worthless checks, and the debtor and his company incurred joint and several liability for the damages resulting from the issuance of the two worthless checks.

The creditor brings this action pursuant to 11 U.S.C. § 523(a)(2)(A) seeking to exempt from discharge the state court judgment based upon the debtor's fraud and misrepresentation in obtaining flooring material by issuing two worthless checks. The bankruptcy court is not confined to a review of the final judgment and record in the prior state court proceeding when determining dischargeability of a debt. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The Court,

therefore, must determine whether the state court judgment is dischargeable under 11 U.S.C. § 523(a)(2)(A).

Under 11 U.S.C. § 523(a)(2)(A), a debt will be excepted from discharge when it is obtained by "false pretenses, a false representation, or actual fraud...." In order for a creditor to prevail on a dischargeability count under § 523(a)(2)(A), four elements must be proven by clear and convincing evidence:

1. That the debtor made a false representation with the purpose and intention of deceiving the creditor;

2. That the creditor relied on the representation;

3. That the creditor's reliance was reasonably founded; and,

4. That the creditor sustained the alleged damages and loss as a result of those misrepresentations.

*In re Hunter*, 780 F.2d 1577 (11th Cir. 1986).

■ The Court acknowledges that there is a split of authority on the question of whether the issuance of a check constitutes an implied representation that there are sufficient funds on the account to cover the check. *See In re Horwitz*, 100 B.R. 395, 398 (Bankr.N.D.Ill.1989). However, a debtor who knowingly issues a worthless check and makes oral representations that the check will be honored is guilty of making a false representation. *In re Perkins*, 52 B.R. 355 (Bankr.M.D.Fla.1985); *In re Tabers f/d/b/a Earl Tabers Used Cars*, 28 B.R. 679 (Bankr.W.D.Ky.1983); *In re Kurdoghlian*, 30 B.R. 500 (Bankr. 9th Cir. 1983). In *In re Kurdoghlian*, the court held that a debtor's issuance of worthless checks constituted fraud where the evidence indicated that the debtor had actual knowledge that the account contained insufficient funds. *In re Kurdoghlian*, 30 B.R. at 502. Similarly, in *In re Perkins*, Chief Judge Paskay noted:

It has been well established that when a person issues a worthless check, he impliedly represents that there are sufficient funds available to honor the check when presented for collection and that one who issues a check knowing that he has no

funds to cover the check is without doubt as guilty of making false representations as one who actually makes an express oral false representation or one in writing. *In re Perkins*, 52 B.R. at 357.

This Court must determine whether the issuance of the two worthless checks by the debtor, who knew his account lacked the sufficient funds to cover the checks, constitutes a material misrepresentation within the meaning of 11 U.S.C. § 523(a)(2)(A). The evidence here indicates that the checking account of the debtor had been overdrawn for almost the entire month of June, 1987. Knowing that the account lacked sufficient funds, and aware that the creditor would provide no additional supplies until it was paid, the debtor knowingly issued the two checks to assure the receipt of additional flooring material.

■ The debtor argues that the requisite intent to deceive was not present in this case. In support of his position, the debtor claims that he instructed the creditor to hold the first check for a few days advising the creditor that there were insufficient funds in the account at that time. The debtor asserts that his instruction to hold the check effectively put the creditor on notice as to the condition of the debtor's account and, thereby, confirms his lack of intent to deceive the creditor.

The Court is not convinced by the argument of the debtor. A debtor's intent to defraud may be inferred from the totality of the circumstances. *In re Lacey*, 85 B.R. 908 (Bankr.S.D.Fla.1988). The debtor issued and delivered the first check to the creditor on June 18, 1987. Thereafter, on June 29, 1987, the debtor issued and delivered the second check with no instruction that it should be held by the creditor. There was no credible evidence indicating that the creditor was instructed to hold the first check. On the contrary, the evidence indicates that the creditor was not advised to withhold deposit of the two checks. Therefore, the Court finds that the debtor's issuance of the two worthless checks to assure the continued supply of flooring material by the creditor is sufficient evidence of the debtor's intent to defraud.

The debtor also contends that there is no evidence of reliance by the creditor. Absent the creditor's reliance on the worthless checks there can be no denial of discharge under 11 U.S.C. § 523(a)(2)(A). *In re Perkins*, 52 B.R. at 357. However, the evidence shows that the creditor had stopped supplying flooring material to the debtor because of the unpaid balance owed by the debtor. It was not until the debtor delivered the first check that the creditor again supplied flooring material to the debtor. Following the delivery of the second payment, and before the first check had been returned unpaid, the creditor resumed supplying the debtor materials.

Further, the debtor argues that, even if the creditor relied on the issuance of the two checks, any reliance by the creditor on the payments was unreasonable under the circumstances. The debtor cites Florida Statute, § 832.05, and contends that this statute prohibits the payee or holder of a check who has actual knowledge, or has reason to believe, prior to the drawing of the check, that the drawer did not have on deposit with the drawee sufficient funds to insure payment of the instrument, from recovering on a postdated check. Fla.Stat.Ann. § 832.05 (West 1989). The debtor contends that the creditor knew or should have known that the checks would be worthless because the money to fund the checking account was to come from the proceeds of a specific job for which the debtor was not going to be paid.

There are two flaws with the debtor's argument. First, the debtor's reliance on the language of Florida Statute, § 832.05, is erroneous. The statute provides for criminal prosecution based upon the issuance of a worthless check. The exception relied upon by the debtor applies exclusively to criminal prosecution. Recovery of civil damages based on the issuance of a worthless check may be made by a payee pursuant to Florida Statue, § 68.065, which provides for no such exception. Secondly, the evidence demonstrates that the debtor had not advised the creditor about the problems with the payment on the particular job until after the debtor had issued the two worthless checks. Therefore, the creditor had no knowledge or reason to believe

that the debtor would not be paid for the services rendered on the job. Accordingly, the creditor reasonably relied on the issuance of the two checks when providing additional flooring material. Further, the creditor's reliance resulted in damages in that the creditor supplied materials for which he was never paid.

Finally, the debtor contends that the filing of the bankruptcy petition precludes the imposition of personal liability on the debtor for the monies owed the creditor. However, a corporate officer, director, or shareholder may incur personal liability for tortious conduct, including fraud, in which he is involved. *In re Fields*, 44 B.R. 322 (Bankr.S.D.Fla.1984); *In re Gitelman*, 74 B.R. 492 (Bankr.S.D.Fla.1987). In the instant case, the debtor participated in actual fraud in that he personally signed and delivered the check, and orally represented to the creditor that the first check was good. Moreover, the final judgment in the state court proceedings assessed personal liability on the debtor for the damages sustained by the creditor as a result of the issuance of the two worthless checks.

Based upon the foregoing facts, this Court finds that the creditor has proven, by clear and convincing evidence, the elements of 11 U.S.C. § 523(a)(2)(A) and therefore the debt is nondischargeable.