**In re Ronald A. MAHINSKE, d/b/a Quality Collision & Paint, Debtor,**

**ROEBUCK AUTO SALES, INC., d/b/a Roebuck Mazda, Plaintiff,**

**v.**

**Ronald A. MAHINSKE, d/b/a Quality Collision & Paint, Defendant.**

Bankruptcy No. 91–07264.
Adv. No. 91–00454.

United States Bankruptcy Court,
N.D. Alabama, S.D.

June 2, 1992.

Drayton N. James, Birmingham, AL, for debtor.

Garrick L. Stotser, Birmingham, AL, for plaintiff.

## MEMORANDUM OPINION

TAMARA O. MITCHELL, Bankruptcy Judge.

This cause is before the Court on the Plaintiff's complaint to have an obligation of the Debtor excepted from discharge under Bankruptcy Code Section 523(a)(2)(A). Trial was held on May 19, 1992. Appearing were the Debtor, Ronald A. Mahinske, the Debtor's attorney, Drayton N. James, and the Plaintiff's attorney, Garrick L. Stotser. This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

The Plaintiff alleges in its complaint that the Debtor fraudulently obtained property by issuing checks that were never honored and never intended to be honored. Accordingly, Plaintiff seeks to have the Debtor's obligation excepted from discharge under Bankruptcy Code Section 523(a)(2)(A). After consideration of the evidence and the testimony, the Court has determined that this debt is dischargeable.[1]

### Findings of Fact

The Debtor operated an automotive body repair shop specializing in the repair of Mazda automobiles. Since the formation of the business in 1986, the Debtor regularly conducted business with the Plaintiff's dealerships, Roebuck Mazda and Med Center Mazda. The Plaintiff testified that both dealerships referred repair jobs to him, and he purchased the majority of the parts necessary for the jobs from Roebuck Mazda. During September of 1991, Debtor was working on a major overhaul of an automobile, a job that required him to make several parts purchases from Roebuck Mazda.

Plaintiff alleges that Debtor issued four checks totaling $2,587.51 with the intent to obtain parts for this job but not with the intent to honor the checks. The first check was dated September 3, 1991 and was in the amount of $262.08. The second check was dated September 10, 1991 and was in the amount of $175.00. The third check was dated September 12, 1991 and was in the amount of $374.08. The fourth check was dated September 16, 1991 and was in the amount of $1,776.35. Charles Philpot, parts manager for Roebuck Mazda, testified that in September of 1991 he dealt with the Debtor regarding the Debtor's purchases of parts for the ongoing repair job. Philpot testified that the Debtor would write a check for the amount due and would request that the check be held for several days. According to Philpot, Debtor was waiting for insurance payments, which would cover the price of parts he was purchasing. The Plaintiff held the checks until September 26, 1991, then deposited them. The Debtor testified that, because he feared criminal liability for writing an insufficient funds check and based on the advice of his attorney, he ordered his bank to stop payment on the checks. The bank did so, and the checks were returned to the Plaintiff marked "stop pay." The checks remain unhonored.

Debtor testified that during the time the checks were being issued, he was actively seeking an outside source of funding for his failing business. He testified that he had negotiated with Joe Bruno of Bruno's, Inc., concerning a small loan and Bruno had referred him to someone else in the organization. Debtor testified that, although this alternate funding source did not materialize, he fully expected it would. He also testified that he had every intention to pay the checks as issued to the Plaintiff. Debtor testified that the check written on September 3, 1991 was written with the knowledge that his account contained insufficient funds, but that he intended a subsequent deposit to cover the check.

Philpot testified that, although this was the first occasion that the Debtor's checks

---

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

to the Plaintiff were stopped, some of the checks the Debtor had written over the course of the business relationship between the parties had been returned for insufficient funds. These checks were always honored subsequently, however.

The Debtor filed his voluntary petition under Chapter 7, along with the proper schedules, on September 24, 1991. The petition and schedules were dated September 16, 1991, and listed Roebuck Mazda as a creditor holding claims for the amount of the four checks. The Debtor's scheduling of the amount of the checks and the invoice numbers for which they were issued conform to the checks themselves, which were admitted into evidence as Plaintiff's Exhibits 1–4.

Debtor testified that he may have signed the bankruptcy petition and schedules in blank. He also signed the fourth check to Roebuck Mazda in blank, and instructed his business manager to issue the check for parts if necessary. Debtor testified that he did this because he was scheduled to be out of town on September 16, 1991. Although it could appear that the Debtor intended the fourth ·check to be issued after his bankruptcy filing, the listing of all the checks as debts and including the check numbers and invoice numbers negates this inference. Debtor's petition could not have been filed before the fourth and final check was issued, because it was only then that the debt was reduced to a sum certain capable of being schedules as non-contingent and liquidated.

### Conclusions of Law

In the complaint of this matter, the Plaintiff charged that three checks formed the basis of his claim of nondischargeability.

However, at trial Plaintiff introduced four checks, corresponding to the four checks listed on Debtor's bankruptcy schedules. Debtor objected to the Court taking all four checks into consideration in this matter, because only three were alleged in the complaint. The Court feels only a brief examination of the basis of introducing and considering all four checks as evidence is necessary.

Rule 7015 of the Federal Rules of Bankruptcy Procedure incorporates without modification Rule 15 of the Federal Rules of Civil Procedure.[2] Subsection (b) of this rule allows liberal amendment of the pleadings to conform to the evidence, but preserves the result of a trial even if the amendment is not made. The threshold issue of whether to amend the pleadings to allow all four checks into evidence was met, as the parties tried the merits of all four checks. Finally, because this Court has determined that the entire debt complained of is dischargeable, Debtor has not been prejudiced by the introduction or consideration of all four checks. Therefore, the Court will deem all checks properly alleged and before the Court.

 Section 523(a)(2)(A) of the Bankruptcy Code excepts from a debtor's discharge a debt for money, property, or services obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). The Code requires that the party objecting to the discharge of a particular debt show that the debtor obtained money, property, services, or credit. 11 U.S.C. § 523(a)(2)(A). Further, in order to have a particular debt excepted from the discharge on the basis of fraud, a creditor must prove that the debtor made a knowingly false representation with the intent to

2. According to Rule 15(b),

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the found that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. Fed.R.Civ.P. 15(b).

induce reliance by the creditor, that the creditor reasonably relied on the representation, and that the creditor suffered damage as a result of the reliance. *In re Hunter,* 780 F.2d 1577 (11th Cir.1986). The Plaintiff must prove each element by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Debtor admitted that he obtained property, so the first element of a Section 523 fraud action is satisfied. The Plaintiff also proved damages; he relinquished possession of property and has not been compensated. Therefore, the only remaining issues are whether the Debtor made a knowingly false representation, whether he did so with the intent to induce reliance, and whether the Plaintiff's reliance was reasonable.

■ The Plaintiff testified that the Debtor never represented that the checks in question were written on an account with sufficient funds to cover them. In fact, the Debtor did exactly the opposite, as Plaintiff testified. The Debtor, at the time he wrote three of the checks, requested that they be held for several days because he was waiting for funds from another source to be deposited into his account in order to make the checks good. Based on this, the Plaintiff knew he was receiving checks that would not be honored if he tried to deposit them immediately. Therefore, the dispositive question is whether the issuance of the check itself, apart from any contemporaneous verbal representations, was a sufficient "statement" as to the state of Debtor's account that, if false, would render this debt nondischargeable.

The issue of whether a check, issued without a contemporaneous verbal representation as to the state of the maker's account, is a representation that the check is drawn on an account with sufficient funds has been the subject of two divergent lines of cases, which can be conve-

niently labeled the "representation" line and the "no-representation" line.

The progenitor of the representation line, at least in the bankruptcy context, appears to be *In re Kurant,* 3 B.C.D. 832 (Bankr. M.D.Fla. Aug. 11, 1977), wherein the court declared

[i]t cannot be gainsaid or seriously disputed that the issuance of a check carries an implied representation by the issuer that there are funds available to honor the check when presented and the one who issues the check, knowing that he has no funds to cover the check, is just as guilty of making false representations as one who actually makes such representations expressly, either orally or in writing.

*Id.*

Other courts seized on this passage.[3] The decisions in this line of cases, for the most part, contained very little in the way of analysis, and the *Kurant* approach continued to be applied even after the Supreme Court's decision in *Williams v. United States,* 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982).

*Williams* involved an illegal check-kiting scheme in violation of 18 U.S.C. § 1014, which outlaws the use of knowingly false statements to influence the actions of certain financial institutions. The Court was called upon to decide whether the deposit of a bad check in a federally insured bank was among the statute's proscriptions. The Court said that, although the defendant had deposited several checks unsupported by sufficient funds, the defendant's conduct did not involve the making of a false statement. *Williams,* 458 U.S. at 284, 102 S.Ct. at 3091.

[A] check is not a factual assertion at all, and therefore cannot be characterized as "true" or "false." Petitioner's bank checks served only to direct the drawee banks to pay the face amounts to the bearer, while committing petitioner to make good the obligations if the banks

---

**3.** *See, e.g., In re Miller,* 112 B.R. 937 (Bankr. N.D.Ind.1989); *In re Stacey,* 105 B.R. 672 (Bankr.S.D.Ala.1989); *In re Perkins,* 52 B.R. 355 (Bankr.M.D.Fla.1985); *In re Mullin,* 51 B.R. 377 (Bankr.S.D.Ind.1985); *In re Tabers,* 28 B.R. 679 (Bankr.W.D.Ky.1983); *In re Kurdoghlian,* 30 B.R. 500 (Bankr.9th Cir.1983).

dishonored the drafts. Each check did not, in terms, make any representation as to the state of petitioner's bank balance. As defined in the Uniform Commercial Code, a check is simply "a draft drawn on a bank and payable on demand," which "contain[s] an unconditional promise or order to pay a sum certain in money."
458 U.S. at 284–85, 102 S.Ct. at 3091–92 (citations omitted).

Concededly, this statement was made outside a context similar to this proceeding. The circumstances of the case have not prevented its holding from being embraced in the bankruptcy context, however, and even the district in which the representation line of cases began has retreated in the wake of *Williams. See, In re Hammett,* 49 B.R. 533 (Bankr.M.D.Fla.1985). There, the court said that the Supreme Court's "characterization of a check as a non-statement is so broad and unequivocal that this Court does not feel able to find that it is intended to be limited to a context of criminal prosecution." *Hammett,* 49 B.R. at 535. *See also, In re Ethridge,* 80 B.R. 581 (Bankr.M.D.Ga.1987) (*Williams* is persuasive reasoning in action under Section 523 of Code).

▆ This Court concludes that *Williams'* reasoning about the nature of checks is sound, and that its application to the facts of this case would further the Code's promise of a fresh start to the honest but unfortunate debtor. It is also harmonious with the nature of a fraud action under Section 523, which requires that the Plaintiff show actual, as opposed to implied, fraud. *Hunter, supra.* Finally, allowing the use of an insufficient funds check to automatically transform an otherwise innocent transaction into a fraudulent one would ignore commercial and consumer realities; honest people often write checks knowing that their funds are lacking, but do so with the honest belief that they will be able to make up the deficit before the check is presented.

Such, the Court finds, is exactly the situation here. The Debtor's belief that funds would become available was both honest and reasonable. That he subsequently did not apply the funds to his checking account as he had planned does not convert his actions to fraud, as fraud under Section 523 requires a present intent not to perform as promised. Furthermore, it is uncontroverted that Debtor informed the Plaintiff at the time of three of the transactions that the checks were not supported by sufficient funds. This representation precludes finding that the Debtor made a false statement.

Those Courts following the no-representation approach of an insufficient funds check are clear that no fraud will exist absent a positive statement regarding the sufficiency of the debtor's bank account.[4] Because the evidence shows that the Debtor did not falsely represent that his checking account contained sufficient funds, his actions cannot be fraudulent.

A special situation exists with regard to the fourth check, issued to the Plaintiff on September 16, 1991. Debtor testified that he was not in town when the check was issued, and that his business manager issued the check. The Debtor could not, under the circumstances, have made any representation himself. No testimony regarding any statement by the business manager was offered. Therefore, under agency principles no false representation can be imputed to Debtor. Therefore, the court finds that, as to the fourth check, no representation or statement of any kind was alleged.

Because Plaintiff has failed to prove by a preponderance of the evidence that Debtor made any false representation regarding any of the checks in question, the elements of intent to deceive and reliance must also fail. Based on the foregoing, the relief

---

**4.** *See, e.g., In re Wagenti,* 110 B.R. 602 (Bankr. S.D.Fla.1990) (representation that check was good); *In re Basham,* 106 B.R. 453 (Bankr. E.D.Va.1989) (representation that check was "good as cash"); *In re Horwitz,* 100 B.R. 395 (Bankr.N.D.Ill.1989) (representation that check would be honored); *In re Barth,* 4 B.R. 141 (Bankr.W.D.Mo.1980) (debtor must make concurrent statement about account).

Plaintiff requests is not due to be granted, and this debt is due to be declared dischargeable. An appropriate order will be entered.